**Ronald Wilcox, Esq., 176601**
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@post.harvard.edu

**Peter F. Barry, Esq., 0266577 (Minnesota - Admitted Pro Hac Vice)**
Barry & Slade, LLC
2021 E. Hennepin Are, #195
Minneapolis, Minnesota 55413
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
pbarry@lawpoint.com

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IRMA SANCHEZ, JORGE SANCHEZ AND SOPHIA SANCHEZ,<br><br>Plaintiffs,<br><br>v.<br><br>CLIENT SERVICES, INC. AND KARLA DAVIS,<br><br>Defendants. | **CIV. NO. C06-06280 PVT**<br><br>**DECLARATION OF PETER F. BARRY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AND/OR PRECLUDE** |

1. That I am one of the Plaintiffs' attorneys in the matter above-captioned.

2. That I make this declaration in support of Plaintiffs' motion to compel those discovery items identified in Plaintiffs' Motion to Compel dated July 24, 2007, and for a limited Protective Order as further described in said Motion.

**Non-appearance of Party Witnesses on February 28, 2007**

3. That the Defendants failed to appear and produce their Fed.R.Civ.P. 30(b)(6)

designee for a duly noticed deposition of at their corporate headquarters on February 28, 2007.  *See Exhibit 1*.

4. That Defendant Karla Davis failed to appear for her duly noticed deposition on February 28, 2007, as well.  *See Exhibit 2*.

5. That both of these depositions were noticed for February 28, 2007, based upon the explicit agreement of Counsel for the Defendant Steve Scott, Esq.

6. The date was arrived at by meeting and conferring by telephone and email with Mr. Scott on and through January 26, 2007.  *See Exhibit 3*.

7. That during our telephone negotiations for deposition dates with Mr. Scott, we agreed that the depositions of Ms. Karla Davis would take place starting on February 28, 2007 in the morning.

8. That we also agreed that the depositions of the other collection employees would take place thereafter, continuing on March 1, with March 2, 2007, left as a possible spillover day, in the event the depositions could not be completed by the end of business on March 1, 2007.

9. That the scheduling of these depositions was complicated by the fact that all counsel had busy calendars during this time frame, but that all counsel agreed by consensus to this workable schedule.

10. That on February 4, 2007, at approximately 1:40 p.m. my co-counsel, Mr. Ron Wilcox, booked a flight and hotel reservation through Expedia.com which would allow him to get into St. Louis, Missouri the night before the depositions were to begin on February 28, 2007.  *See Exhibit 4*.

11. That on February 4, 2007, at approximately 2:25 p.m. this Declarant booked a flight and hotel reservation through Expedia.com which would allow me to get into St. Louis, Missouri the night before the depositions were to begin on February 28, 2007.  *See Exhibit 5*.

- 2 -

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

12. That on February 5, 2007, Defendants' counsel, Mr. Stephen Scott acknowledged and confirmed in writing his agreement to hold these depositions commencing February 28, 2007, and on through March 2, 2007. *See Exhibit 6*.

13. That Plaintiffs' counsel also agreed to produce, and did in fact produce, the Plaintiffs for deposition on the agreed upon date of February 9, 2007, and said depositions were completed without controversy.

14. That on February 22, 2007, six days before these depositions were to be taken, Mr. Scott mailed and faxed a letter to co-counsel and the undersigned indicating that he would not be producing Defendant Karla Davis for her deposition until March 2, 2007. *See Exhibit 7*.

15. The letter also unilaterally sought to limit the current and former employees Plaintiffs could depose to the 30(b)(6) designee and the party deponent Ms. Karla Davis and to unilaterally reschedule the 30(b)(6) designee to March 1 or March 2, 2007. *Id*.

16. That this was despite the fact that these depositions were for persons that Defendants had previously identified as persons with knowledge of facts in the case pursuant to Fed.R.Civ.P. 26(a)(1). *See Exhibit 8*.

17. That this was further despite the fact that all parties agreed that the depositions were to begin on the morning of February 28, 2007 with Ms. Karla Davis.

18. That Plaintiff's counsel did not have reasonable notice of this unilateral attempt by Defendants to change these deposition dates because we had made non-refundable hotel reservations and plane flights based upon the February 28, 2007 starting date, through Expedia.com.

19. That Plaintiff's counsel twice tried to call Defendants' counsel, Mr. Brian Davis, to inquire about why Defendants felt that they were entitled to unilaterally change these deposition dates, but received no return calls. *See Exhibit 9, page*

*7, line 14.*

20. That Plaintiff's counsel met and conferred with Defendants' Counsel Mr. Charles Tillage, Esq. by telephone and letter on February 23, 2007, to make clear our position that the depositions were to go forward as noticed, and in the sequence we had specified by our notices of taking deposition. *See Exhibit 10.*

21. That on February 26, 2007, Defendants' Counsel Mr. Brian Davis, Esq. sent a letter to the undersigned regarding this discovery dispute. *See Exhibit 11.*

22. That in his letter, Mr. Davis in part asserted that Plaintiffs no longer needed to take the depositions of persons whom it had listed in its Fed.R.Civ.P. 26(a)(1) disclosures and whom had been directly involved in collecting the subject debt from Plaintiffs. Mr. Davis also restated his position that the party Defendants would not be produced on February 28, 2007, and did not offer to reimburse the Plaintiffs' counsel for their travel costs related to the Defendants' attempt to change the deposition schedule at the last-minute. *Id.*

23. That in response to Defendants' letter on February 26, 2007, the undersigned counsel sent an urgent letter to Defendants' counsel noting amongst other things, a refusal on the part of Defendants to reimburse Plaintiff's counsel for the travel expenses caused by the last minute, unilateral attempt to change and rearrange deposition dates which were taking place half-way across the country. *See Exhibit 12.*

24. That moreover, Plaintiffs' counsel advised Defendants that they were not permitted to dictate the sequencing of depositions or to ignore duly noticed depositions absent a protective order. *Id.*

25. That Plaintiffs' counsel was stuck in a Catch-22 situation: no show on February 28, 2007 and risk Fed.R.Civ.P. 37 sanctions for having noticed party depositions and then not appeared; or, appear on February 28, 2007, and risk that the

- 4 -

Defendants would not.

26. That Plaintiffs chose to proceed with the previously mutually agreed upon deposition dates, absent a compelling explanation for the unilateral attempt to change these dates combined with the lack of an offer to reimburse Plaintiffs' counsel for the significant costs of last minute travel changes.

27. That it was patently unreasonable for the Defendants to agree to deposition dates, and then without justification or explanation, unilaterally change those dates after Plaintiffs' counsel had already made travel arrangements.

28. That it has been the undersigned's experience that last minute changes to an Expedia.com travel itinerary usually result in large airline change fees, and non-refundable hotel and rental car charges. *See Exhibit 13*.

29. That the burden was upon Defendants to either move for a protective order to prevent the depositions from going forward on February 28, 2007, or appear and give testimony. Defendants unfortunately chose to do neither.

30. That on February 28, 2007, Plaintiff's counsel arrived to begin their depositions of the parties at the Client Services, Inc. corporate headquarters at approximately 9:00 a.m. with a court reporter.

31. That after waiting in the lobby for approximately 20 minutes, the general counsel, Ms. Kerry Simpson, appeared and asked counsel to leave the premises and indicated that no depositions would be taking place that day.

32. That counsel left thereafter and returned to Client Services, Inc. corporate headquarters the following day.

33. That the non-appearance by Defendant Karla Davis and the 30(b)(6) designee at the noticed date and time was prejudicial to the Plaintiffs in that interfered with Plaintiff's trial strategy, caused us to waste an entire business day waiting to commence these depositions, and forced Plaintiffs counsel to have to return on

- 5 -

another trip to St. Louis, Missouri in order to take these depositions.

34. That although Defendants were apparently ready to produce Ms. Karla Davis on Friday, March 2, 2007, we did not have sufficient time to take her deposition or the deposition of the 30(b)(6) witness because we had other employee witness depositions to take.

35. That Plaintiffs' counsel herein could have likely completed all of the necessary depositions in this case in one trip, had these depositions started on the agreed upon date on February 28, 2007.

36. That when the undersigned offered to stay on and work Saturday, March 4, 2007, to get these depositions done, Defendants' counsel refused.

37. That the total cost for the extra day in St. Louis, Missouri necessitated by Defendants' non-appearance at their depositions was approximately $136.10 for hotel costs, $36.62 for meal costs, and $3,200.00 as and for attorneys fees representing 8 hours at $400.00 per hour, for a total cost of $3,372.72.

38. Plaintiffs' counsel repeatedly attempted, and did in fact, meet and confer with Defendants in an effort to head-off this discovery problem, as required by the Local Rules.

39. That Defendants' refusal to produce these deposition witnesses as agreed and as duly noticed also caused the undersigned counsel to have to stay for another full day in St. Louis because of flight cancellations due to inclement weather, on Saturday March 3, 2007.

40. That this non-appearance by Defendants was personally difficult on the undersigned counsel and my wife because we had a seven-month old baby back at home to care for, and I was stuck in St. Louis two days longer than necessary only to later be forced to return to St. Louis to take the depositions of those who failed to appear.

- 6 -

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

**Refusal to Permit Corporate Designee to Testify on Certain Topics**

41. That after rescheduling the party depositions, during the course of deposing Mr. Jerry Peterson, Defendant Client Services, Inc.'s 30(b)(6) designee, on April 11, 2007, Defendants' counsel made objections to several topics of inquiry which had previously been noticed for this deposition. *See Exhibit 14*.

42. Counsel refused to allow the 30(b)(6) witness to testify about these critical discovery topics, and also failed to produce documents duces tecum responsive to these topics. *See Exhibit 15*.

*Contents of Personnel Files*

43. That Defendants objected to testimony related to the contents of personnel files with respect to deposition notice topic number 10. *Id*.

44. That this information is necessary to determine not only whether any employee has ever been disciplined related to this case, but also as to any other allegation of collection misconduct.

45. That this information is not protected by any privilege and is obviously discoverable for numerous reasons, not the least of which it may establish ratification of this conduct by the Defendants' management.

46. That these personnel files may also establish if there were prior complaints and or allegations of collection misconduct made against these collectors case.

47. Finally, the personnel files would likely yield discoverable information regarding pre-hiring background checks and post-hiring training and disciplinary issues. This information is discoverable and these Defendants should be compelled to produce it.

48. That in fact, Defendants did earlier make a written objection to a portion of topic 10, but indicated that they would produce any information regarding disciplinary action or complaints about Ms. Karla Davis, but at the time of her actual

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

deposition instead produced nothing.  *See Exhibit 7, page 2.*

### *Information Regarding Financial Condition*

49. That Defendants' also refused to provide information regarding their financial condition with respect to deposition notice topics 31 and 32.  *Id.*

50. That Counsel for the Defendants objected at this deposition based upon privacy grounds, relevancy grounds, and relevancy.  Moreover, counsel for Defendants stated that Mr. Peterson did not have the knowledge base upon which he could testify on the company's financial issues.  *See Exhibit 15, pages 10 and 17-18.*

51. That this information is discoverable and relevant in that Plaintiffs are entitled to know the financial condition of Defendant Client Services, Inc. in assessing the probability and amount of punitive damages in this case at trial, as well as its ability to pay any potential judgment.

### *Factual Basis for Answer and Results of Investigation*

52. That with respect to deposition notice topics 9, 11, 12, and 13, Defendants refused to provide corporate witness testimony with respect to the underlying factual basis for their Answer in the lawsuit; the factual basis for the defenses plead; the facts supporting any bona fide error defense they might assert; and, the facts surrounding their investigation into the Complaint.  *Id.*

53. That Plaintiffs are certainly entitled to know all facts upon which Defendants rely not only for their defenses, but which surround this case that are within their knowledge.

54. That in addition, Plaintiffs are entitled to know whether or not Defendants are relying upon any defense of bona fide error.

55. That if Defendants are not so relying, they should so stipulate on the record.

56. That it is highly prejudicial to the Plaintiffs if Defendants be permitted to refuse to answer questions as to this defense under 15 U.S.C. § 1692k(a)(3), and then later

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

raise it as a defense at trial or upon a summary judgment motion.

57. That in fact, Defendant made no objections to topics 11, 12, and 13 in its written objection to a portion of the 30(b)(6) topics on February 22, 2007, but at the time of the actual deposition produced nothing and refused to allow the corporate designee testify on these topics. *See Exhibit 7, page 2*.

58. That Defendants' Counsel later provided further written objections and asserted justification for refusing to allow the 30(b)(6) corporate designee to testify on certain topics, almost two months after these depositions had been noticed, and 18 days after the depositions had already been taken. *See Exhibit 16*.

59. That these objections were made well after the 30-day time frame to either produce discovery or make evidentiary objections, and to the extent that Defendants seek to broaden the basis of their objections, should be stricken as waived and untimely objections.

### *Information Regarding Prior Complaints and Lawsuits*

60. That Defendants' also refused to provide information regarding prior complaints and lawsuits with respect to deposition notice topic 26. *See Exhibit 15*.

61. That this information is essential in helping Plaintiffs to establish possible punitive damages as well as for the Court in determining statutory damages at trial.

62. That under the Fair Debt Collection Practices Act ("FDCPA") the Court is to consider, among other relevant factors, "…the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *See 15 U.S.C. § 1692k(a)(3)*.

63. That the reason given by counsel at the Fed.R.Civ.P. 30(b)(6) deposition was simply that "this witness is not a witness that has that information in his knowledge base, so he can't testify on that." *See Exhibit 15, page 9, line 24*.

- 9 -

64. That previously, Defendants' counsel had objected by letter to topic 26 on the grounds that it was "vague and ambiguous, burdensome and oppressive, overbroad and not reasonably calculated to lead to the discovery of admissible evidence." *See Exhibit 7, page 2*.

## Assertion of Impermissible Privacy Privilege

65. That on April 11, 2007, Defendant Karla Davis's deposition was taken in St. Charles, Missouri.

66. That during Ms. Davis's deposition, her counsel repeatedly and improperly invoked a "privacy" privilege with respect to her involvement in prior legal proceedings, her job performance appraisals, and her personnel matters, generally. *See Exhibit 17, pages 11-15, 19-20, 23, and 26-27*.

67. The parties have already entered into a Stipulated Protective Order. There was no reasonable justification to refuse to answer the deposition questions.

68. That Plaintiffs are entitled to know the contents of Defendant Davis's personnel file because its contents may show similar prior acts of collection misconduct, complaints, training issues, and performance appraisal information.

69. That it is also axiomatic that Plaintiffs are entitled to know about prior sworn statements in other legal proceedings that Ms. Davis has been involved in order to develop impeachment material, trial strategy, and or to properly cross examine this party deponent.

## Non-appearance of Third-Party Deponent Don Bailey

70. That Plaintiffs subpoenaed the deposition testimony of a former employee, Mr. Don Bailey, on April 12, 2007, to coincide with the make-up depositions of Defendant Karla Davis and the corporate designee on April 11 and 12, 2007. *See Exhibit 18*.

71. That Defendants' counsel refused to allow this subpoenaed deposition testimony

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

of Mr. Don Bailey to go forward. *See Exhibit 19, pages 3-18.*

72. That this testimony was important for a number of reasons in this case. Mr. Bailey could testify to pattern, practice, and policies at Defendant Client Services, Inc. during the relevant periods in this case since he worked there at those times. Mr. Bailey has also been named in earlier lawsuits, also alleging abusive and intrusive collection phone calls, involving Defendant Client Services, Inc. As a former employee, Mr. Bailey would be freer to speak his mind on such topics of collector practices, discipline, training, compensation, and other matters relevant to this case.

73. That at no time prior to April 11, 2007, did Defendants' counsel ever advise this declarant that they represented Mr. Bailey in any capacity.

74. That on April 12, 2007, at approximately 3:00 p.m. Mr. Bailey arrived at the hotel room where his deposition was to take place and knocked on the door.

75. That Counsel for the Defendants then took a break from the deposition that was currently taking place and went out into the hallway to speak with Mr. Bailey.

76. That thereafter, Counsel for the Defendants returned to the deposition room some 50 or so minutes later and advised the undersigned that Mr. Bailey would not be appearing for his deposition and that he had returned to work.

77. That upon information and belief, Defendants' counsel advised Mr. Bailey that he could leave, despite having been properly subpoenaed for this deposition.

78. That there was no justification for instructing or advising this witness that he could leave the premises where this and the other depositions were to take place.

79. That Defendants' counsel did not file a motion to quash Mr. Bailey's subpoena in the United States District Court for the Eastern District of Missouri, or file a motion for a protective order with the United States District Court for the Northern District of California, as was his right and the procedurally appropriate

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

thing to do especially given that they have now asserted that they represent him.

80. That instead, Defendants' counsel unilaterally determined that this subpoenaed testimony would not go forward that day and excused his "client" from having to appear that day.

81. That even more troubling in this circumstance was Defendants' counsel's representations on the record with respect to his legal representation of Mr. Bailey.

82. That on April 11, 2007, Defendants' counsel represented to the undersigned that he had been in communication with Mr. Bailey; that he represented him as a lawyer; and, that he was uncertain whether or not Mr. Bailey would appear to testify the following day:

```
Page 92

    3 MR. BARRY: Mr. Davis?

    4 MR. DAVIS: Yeah.

    5 MR. BARRY: Have you spoken with Don Bailey?
    6 We're still on the record.

    7 MR. DAVIS: I'm not going to answer any
    8 questions on the record.

    9 MR. BARRY: Well, I want to know whether or
   10 not he's going to appear tomorrow, is my question.

   11 MR. DAVIS: You know --

   12 MR. BARRY: Because if he is --

   13 MR. DAVIS: To be honest with you on that, I
   14 really don't know. I don't know if he's going to
   15 appear tomorrow.

   16 MR. BARRY: Do you represent him?

   17 MR. DAVIS: Absolutely.
```

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

>       18 MR. BARRY: Okay.
>
>       19 MR. DAVIS: And as soon as I can give you an
>       20 assurance that he's going to appear, I definitely
>       21 will. We represent him. I just don't feel
>       22 comfortable making a promise to you at this moment
>       23 that he will show up tomorrow. I hope he does. If I
>       24 get confirmation he will, I'll give it to you. At
>       25 this moment I don't have that yet.
>
> Page 93
>
>       1 MR. BARRY: Okay.
>
>       2 MR. DAVIS: But as soon as I have it, I'm
>       3 going to pass it on. It's not a secret.
>
>       4 MR. BARRY: But you represent him?
>
>       5 MR. DAVIS: Absolutely.
>
>       6 MR. BARRY: You've apparently been in
>       7 communication with him?
>
>       8 MR. DAVIS: Absolutely.
>
>       9 MR. BARRY: All right. Okay. …

*See Exhibit 18, pages 92-93.*

83. That on the next day, April 12, 2007, the following exchange took place between counsel:

> PAGE 5
>
>       6 MR. BARRY: And, in fact, Mr. Davis, who is
>       7 [Mr. Bailey's] counsel?
>
>       8 MR. DAVIS: I am his counsel.
>
>       9 MR. BARRY: Okay. Now, my understanding,
>       10 from your comments yesterday, were that you had
>       11 already been in communication with him and that you
>       12 were his counsel. Now today, you've just indicated
>       13 that this is the first opportunity you've ever had to
>       14 speak with him.
>
>       15 MR. DAVIS: Yes, because what -- just to

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

```
16 clarify, and apparently you misunderstood me
17 yesterday. What we had done, as soon as we learned of
18 the subpoena -- and I didn't learn of it until
19 Saturday -- I sent an e-mail to Ron, as a matter of
20 fact -- we have left messages for Mr. Bailey, and it
21 sounds like we did not have the correct phone numbers
22 for him, which is why I was not able to get a
23 telephone call back from him. So I have not had an
24 opportunity to talk to him, although I had attempted
25 to contact, and we had left messages for him.
```

Page 6

```
 1 MR. BARRY: Well, given the fact he's a
 2 former employee, I can't -- I can't get my mind around
 3 the notion that you represented him without having
 4 talked to him initially to be represented by him.

 5 MR. DAVIS: We -- we represent all current
 6 and former employees of Client Services, Incorporated,
 7 in connection with this litigation. For example,
 8 Karla Davis is a former employee of Client Services,
 9 Incorporated, and frankly, it doesn't make any
10 difference for purposes of us defending Client
11 Services and their employees, current and former, in
12 this matter. And Mr. Bailey, now that he was able to
13 finally have a direct communication with me,
14 confirmed, and I can confirm for you on the record,
15 that I represent him, and I will be defending him in
16 this deposition in the event he appears for a
17 deposition.

18 MR. BARRY: Well, I sought to communicate
19 with Mr. Bailey yesterday, prior to your
20 representation of him. You told me that you
21 represented him. Now, on that basis, I couldn't have
22 communication with him. Now you're telling me today
23 on the record that you represented him, that you had
24 your first communication with him in this hotel lobby
25 today and spent the time that we noted for his
```

Page 7

```
 1 deposition apparently conversing with him and getting
 2 yourself retained as his attorney, and used up any
 3 available time we would have had to depose him in this
 4 matter, and we could have dispensed with his
 5 deposition, likely dispensed with the deposition in
```

- 14 -
_____
Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

```
 6 the first 50 minutes that he was here. And so the
 7 problem I have is that you indicated -- you indicated
 8 to me yesterday that you represented him, and now
 9 you're indicating that it was just today that you were
10 retained by him.

11 MR. DAVIS: No, that's not what I'm saying.
12 I wasn't just retained by him today. Again, because
13 apparently this isn't clear to you, we represent
14 Client Service -- Client Services, Incorporated and
15 their current and former employees with respect to
16 this litigation. The moment that you served a
17 subpoena on one of our employees or former employees,
18 then he came within our representation. The fact that
19 you handled it in a way that neither he nor I were
20 provided enough advanced notice is what prevented our
21 ability to have a substantive conversation before the
22 deposition.

23 MR. BARRY: How can you represent a person
24 without their knowledge or consent, Mr. Davis? I'm
25 unaware of how that's possible.
```

Page 8

```
 1 MR. DAVIS: Well, I'm sorry you don't
 2 understand how representation works, but there's no
 3 point in me stating it again, other than to again
 4 remind you that we represent Client Services,
 5 Incorporated and all of their current and former
 6 employees in connection with this litigation.

 7 MR. BARRY: Well, I understand that you've
 8 asserted that, and I understand that you want to
 9 assert that, and I understand that it's in your
10 client's interest, Client Services, and the named
11 parties to have that. But my question is, how -- how
12 is it possible for you to unilaterally state that you
13 represent the entire universe of employees without
14 their consent or without even their knowledge?

15 MR. DAVIS: I obviously don't need to get
16 into that, because, one, it's not my job to educate
17 you on how representation works; and second, anything
18 with respect to the communications with my clients is
19 obviously privileged, so I'm not going to get into
20 that. I'll just add to the record, as well, if it
21 wasn't already obvious, that we are again objecting to
```

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

```
22 unreasonable and ineffective notice for this
23 deposition, which is, frankly, what caused all of
24 these problems, and then the other being that there
25 was no meet and confer effort with respect to
```

Page 9

```
 1 scheduling and also the identity of the witness, when
 2 you consider that Mr. Bailey had no involvement in the
 3 Sanchez account or, for that matter, the Discover Card
 4 Services account. Consequently, he possesses no
 5 discoverable information or admissible information in
 6 this litigation.

 7 MR. BARRY: And I understand you have
 8 objections, but, you know, I'd also note that you've
 9 had better than a week to file a motion to quash or a
10 motion for protective order both with respect to
11 Mr. Andrews, who was produced here yesterday, and with
12 respect to Mr. Bailey, who was not produced here
13 today, and you didn't do so, and so the California
14 local rules, as I understand them, in the United
15 States District Court for the Northern District of
16 California, allows us to serve a subpoena on a third
17 party and then attempt to meet and confer. That
18 didn't happen in this case, and you didn't move to
19 quash the subpoena or for a protective order.
20 Moreover, I object to the -- I'm not -- I'm
21 trying not to use incendiary language with you, Mr.
22 Davis, because I do respect you, but I object to the
23 tactic of telling us that you represent Mr. Bailey,
24 when, in fact, you don't represent him. You didn't
25 represent him as of yesterday. He didn't know who you
```

Page 10

```
 1 were as of yesterday, and you just apparently
 2 contacted him for the first time. He learned of you
 3 today, and I have a problem with that.
 4 I'd like for you to clarify what your
 5 definition of "former employees" is, because what it
 6 appears as though you are seeking to -- you are
 7 seeking to prevent us, as counsel, from investigating
 8 this case by taking -- by taking -- unilaterally
 9 stating that you represent an entire universe of
10 people with or without their consent here in Missouri.
11 I don't -- I'm not privy to whether or not you're
12 licensed here in Missouri. I don't think that you
```

- 16 -
_____
Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

> 13 are, but if you are, you can correct the record now.
> 14 But I don't understand how you can prevent, by just
> 15 unilaterally stating you represent every single,
> 16 solitary, former employee of Client Services, with or
> 17 without their consent, with respect to this
> 18 litigation. I don't know how they consented to that.
> 19 I don't know if you publish a notice for that or how
> 20 that happens.
> 21 And I know you said you don't seek to
> 22 educate me on representation, and I trust that you
> 23 don't, because I don't believe that you, yourself,
> 24 have a clear understanding of when you can and cannot
> 25 represent a particular party.
>
> Page 11
>
> 1 Mr. Bailey appeared today, ready to go
> 2 forward in this deposition at this hotel, and
> 3 apparently you took him out in the hallway and talked
> 4 with him and didn't attempt to meet and confer with us
> 5 at that time. You did send an e-mail to us previously
> 6 with respect to meet and confer, and we returned your
> 7 phone call, or Mr. Wilcox returned your phone call,
> 8 though we did not get a return call back from you.
> 9 My question is, to you, do you have a
> 10 retainer agreement with Mr. Bailey that's been signed,
> 11 and how are your fees being paid, if any? Are you a
> 12 pro bono attorney with respect to Mr. Bailey? And how
> 13 is it that you were able to contract your services
> 14 with him in the hallway of this hotel?
>
> 15 MR. DAVIS: The only thing I'll add is just
> 16 to clarify one of your many misstatements, is that
> 17 Mr. Bailey, as a result of the way you handled this,
> 18 was not prepared to go forward with his deposition
> 19 today, and I'll just leave it at that.

*See Exhibit 19, pages 5-11.*

84. That this third-party deponent testimony was pre-empted and prevented by Defendants' counsel requiring Plaintiffs' counsel to make yet another unnecessary and expensive trip to St. Louis, Missouri in order to gather evidence in their case.

85. That Defendants' counsel has improperly sought to declare that his law firm

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

represents all former employees with regard to this case. It goes without saying that a person has a right to choose counsel—and that it cannot be appointed to them without their consent in a matter such as this.

86. That moreover, both California and Missouri ethical rules permit counsel to seek out and talk to former employees of a corporate Defendant such as this one, and under circumstances such as these, so long as those employees are not known to be represented by counsel.

87. That Defendants' counsel's assertion that he is the de facto legal representative for all current and former employees of Defendant Client Services, Inc. is without legal or factual basis.

88. Defendant also refused to properly respond to Requests for Production of Documents relating to personnel files. *See Exhibit 20, Plaintiff's Interrogatories, Requests for Admissions, and Request for Production of Documents, Set One, Page 11, Number 6. Also see Exhibit 21, Defendant's Client Services, Inc.'s and Karla Davis' Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents, Page 7, item 6.*

89. The parties met and conferred on these matters since February 2007 via telephone, fax, on the record at depositions, via e-mail, and finally in a one-hour telephone conference on July 27, 2007, attended by two counsel for Defendants and two counsel for Plaintiffs. Unfortunately, the matters were not resolved.

90. That this declarant respectfully asserts that this Honorable Court should enter a protective order clarifying this fact and thereby preventing Defendants' counsel from making sweeping assertions of representation such as these without a factual basis. Otherwise, Plaintiffs will be prejudiced by being unable to speak to witnesses that may lead to the discovery of admissible evidence.

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude

Further Your Declarant Sayeth Naught.

Respectfully Submitted,

Dated: July 30, 2007                           s/Peter F. Barry
                                               Declarant

Declaration of Peter F. Barry, Esq. in Support of Plaintiffs' Motion to Compel and or Preclude