EXHIBIT 8

1  STEPHEN A. SCOTT (SBN 67467)
   PHUONG H. NGUYEN (SBN 226772)
2  **HAYES, DAVIS, BONINO,**
   **ELLINGSON, McLAY & SCOTT**
3  203 Redwood Shores Pkwy., Suite 480
   Redwood Shores, California  94065
4  Telephone:  650.637.9100
   Facsimile:  650.637-8071
5
   Attorneys for Defendant
6  CLIENT SERVICES, INC.

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9                   SAN JOSE DIVISION

10                                    CASE NO.  C06-06280 PVT
    IRMA SANCHEZ, JORGE SANCHEZ, AND
11  SOPHIA SANCHEZ
                                      **CLIENT SERVICES, INC.'S INITIAL**
12           Plaintiffs,             **WITNESS AND DOCUMENT**
                                      **DISCLOSURES**
13       v.
                                      **[Federal Rules of Civil Procedures, Rule 26]**
14  CLIENT SERVICES, INC.,  AND CLARA
    DAVIS
15
             Defendants.
16

17       Defendant Clients Services, Inc. ("Client Services") hereby submits the following initial

18  disclosure of witnesses and documents pursuant to Federal Rules of Civil Procedures, Rule 26.

19  Should further discovery, independent investigation, research and analysis reveal additional

20  documents, factual information and witnesses potentially subject to disclosure requirements, Client

21  Services reserves the right to supplement, modify and/or amend this disclosure at a later date.

22                                    **I.**
23                 **INITIAL DISCLOSURE OF WITNESSES**

24       1.       Karla Davis
                  1003 South 6th Street
25                St. Charles, Missouri 63301
                  (636) 443-3888
26
         2.       Rich Weckl
27                Client Services, Inc.
                  3451 Harry S. Truman Blvd.
28
    1128018v1                          -1-
    INITIAL WITNESS AND DOCUMENT DISCLOSURES—Case No. C06-06280 PVT

St. Charles, Missouri  63301
(636) 947-2321

3.   William Watson
     Client Services, Inc.
     3451 Harry S. Truman Blvd.
     St. Charles, Missouri  63301
     (636) 947-2321

4.   Gayla Newlin
     Client Services, Inc.
     3451 Harry S. Truman Blvd.
     St. Charles, Missouri  63301
     (636) 947-2321

5.   Judith Cummins
     Client Services, Inc.
     3451 Harry S. Truman Blvd.
     St. Charles, Missouri  63301
     (636) 947-2321

6.   Pamela Welch
     Client Services, Inc.
     3451 Harry S. Truman Blvd.
     St. Charles, Missouri  63301
     (636) 947-2321

7.   Brett Owens
     Client Services, Inc.
     3451 Harry S. Truman Blvd.
     St. Charles, Missouri  63301
     (636) 947-2321

8.   Irma Sanchez
     Santa Clara County, California

9.   Jorge Sanchez
     Santa Clara County, California

10.  Sophia Sanchez
     Santa Clara County, California

11.  Maria Islas
     Milpitas, California

12.  Margarita Sanchez
     Milpitas, California

## II.
## INITIAL DOCUMENT DISCLOSURE

Pursuant to Rule 26, Defendant Client Services hereby discloses all account notes relating to this matter. Defendant Client Services will also provide all collection manuals and training manuals within 7 days of receiving the signed protective order from plaintiffs.

Dated: January 2, 2007

HAYES, DAVIS, BONINO, ELLINGSON, McLAY & SCOTT

Stephen A. Scott
Attorney for Defendant,
CLIENT SERVICES, INC.

1128018v1

INITIAL WITNESS AND DOCUMENT DISCLOSURES—Case No. C06-06280 PVT

# EXHIBIT 9

1            At the outset I would like to just

2  reiterate my objection made on the record yesterday.

3  These depositions were originally scheduled to begin

4  yesterday, Wednesday, February 28, 2007 at 9:00 a.m.

5  Counsel for the plaintiff, myself, as well as

6  Mr. Wilcox, appeared and were told that the

7  depositions had been canceled for the day, postponed

8  to today, which was both prejudicial to the client and

9  inconvenient to counsel personally given the fact that

10  we were here in St. Louis for the duly noted

11  deposition and there was protective order that I'm

12  aware of that was neither on file or noticed or even

13  indicated by counsel.

14            And I would just note for the record that I

15  did attempt to contact Mr. Davis on a couple of

16  occasions and was not given the courtesy of a return

17  phone call.  If I'm mistaken about that, then I'll

18  stand corrected on the record.  At this juncture it's

19  the plaintiffs intention to move for sanctions for the

20  non-appearance of the 30(b)6 witness as well as the

21  party/defendant, Ms. Davis, Karla Davis.  Counsel has

22  indicated to me, it's my understanding that Ms. Davis

23  is going to be produced on Friday.  The original

24  agreement in this case and what had been worked out

25  with my distinguished counsel, Mr. Scott, Steve Scott

1   with Mr. Davis' law firm is that we were to take

2   depositions on Wednesday and Thursday with the idea

3   that if we needed Friday, we could take Friday;

4   otherwise, we would endeavor to complete these

5   depositions in two days and be able to fly out on

6   Thursday night, so as to minimize the amount of time

7   for all counsel away from home and away from their

8   families.  That hasn't been the case.  Instead now

9   we're in a position of having to wait until Friday for

10  a witness and attempt to take these depositions in an

11  order not defined by plaintiff in their discovery

12  plan, their litigation plan, but rather in a plan

13  that's been unilaterally dictated by these defendants.

14          Rule 37 provides for sanctions for the

15  non-appearance of a party/deponent, and in this case

16  it's plaintiffs intent to seek those sanctions in the

17  absence of some other arrangement between the counsel

18  to reimburse for the attorneys' fee and costs to incur

19  and debt had here yesterday, as well as I did offer on

20  a couple of occasions both to Mr. Tillage as well as

21  in letters to Mr. Davis and Mr. Scott, the opportunity

22  for them to either move for protective order so that

23  we could properly engage in depositions or to

24  reimburse for the travel costs and expenses.  I just

25  note that I still haven't received any kind of

1 explanation from Mr. Davis or Mr. Scott or

2 Mr. Tillage.  And also note my continuing objection on

3 the record that at least, as of yesterday, the docket

4 indicated that only Mr. Scott had been entered his

5 appearance in this case, that neither Mr. Davis nor

6 Mr. Tillage had entered an appearance on the federal

7 record and the plaintiffs have a continuing objection

8 to that, failure to note their appearance.

9    With that said, unless you have anything

10 Mr. Davis, I'm going to start the deposition.

11    MR. DAVIS: A couple things.  First, I

12 would agree Steve Scott is distinguished counsel;

13 although, he's not your distinguished counsel.

14 Second, with respect to the scheduling of these

15 depositions, I'm not going to reiterate everything

16 that's already been discussed in the meet and confer,

17 which, as you know, is extensive.  It has to do -- it

18 was in the form of telephone calls, emails and a

19 number of letters exchanged between counsel, but some

20 of it was that the scheduling of the depositions to a

21 certain extent was driven by the availability of the

22 witness.  For example, as you know, Karla Davis, a

23 former employee, who lives about 500 miles from this

24 location, we had to work around her schedule, and at

25 my client's expense, we have paid to get her here as a

1  convenience and a courtesy to you so that all the

2  depositions could take place in one location.  But,

3  again, I'm not going to reiterate all of the points.

4  I disagree with most of what you've said with respect

5  to the scheduling of these depositions.  All of it has

6  been addressed in an extensive meet and confer that

7  can be referred to by counsel and the court later.

8          I would note though, that the appearance of

9  plaintiffs' counsel simply to make a record here

10  yesterday was nothing more than a stunt since both

11  counsel was perfectly aware there wasn't going to be

12  any depositions here yesterday.

13          MR. BARRY:  Well, with all due respect to

14  counsel, Rule 37 provides for sanctions for notice of

15  depositions of the opposing party, and counsel's

16  failure to appear at those depositions, and I'm

17  cognizant of those provisions of Rule 37, as I hope my

18  distinguished opposing counsel would be aware of

19  those.

20          I would also note for the record, unless

21  you've got some explanation for your discourtesy in

22  failing to return my phone calls, I would just note I

23  made two calls to you.  You refused to take one call

24  when you were there, and I made another call and was

25  not given the courtesy of a reply phone call, and I

1   was never told there was any difficulty in scheduling

2   anyone, except I was told that the only date Ms. Davis

3   could appear was Friday after having been assured by

4   Mr. Scott that he would make her appearance for

5   Wednesday and Thursday.

6           So, again, I just note my objection that

7   defendants, despite their clear disagreement, are not

8   entitled to unilaterally dictate the scheduling of

9   these depositions and the sequence in which they're

10  taken.  With that said...

11          MR. DAVIS:  Okay.  Then just let me briefly

12  respond to that since now you're making accusations

13  about me with respect to telephone calls.

14          As you know, I had sent a letter to you on

15  February 26th with respect to what was hopefully going

16  to be the final word with respect to scheduling of

17  these depositions.  My understanding is that you

18  called my office after receipt of that letter and I

19  was in a conference call and then a meeting and then a

20  subsequent conference call that afternoon, but as I

21  explained to my receptionist, I intended to call you

22  back.  Unfortunately, by the time I finished at the

23  end of the day with other matters, you had already

24  e-mailed and faxed a letter stating your position, so

25  for that reason -- and it's only that call that I'm

1   aware of.  It was for that reason I did not bother to

2   simply call back and acknowledge the receipt of your

3   letter since obviously I had it, and I'll leave it at

4   that.

5           MR. BARRY:  Counsel, do you have the

6   identity of the 30(b)6 witness which you intend to

7   produce?

8           MR. DAVIS:  Do I have the identify of him,

9   yes.

10          MR. BARRY:  What's the person's name?

11          MR. DAVIS:  His name is Jerry Peterson.

12          MR. BARRY:  Was Mr. Peterson available for

13   deposition yesterday?

14          MR. DAVIS:  No.

15          MR. BARRY:  Why not?

16          MR. DAVIS:  I'm not going to -- I'm just

17   telling you he's not available.

18          MR. BARRY:  I know you're telling me that

19   but I'm asking why he wasn't available when his

20   deposition was noticed and I was assured by Mr. Scott

21   that he would appear.  Where is Mr. Scott today I

22   guess is my question?  Where is he?

23          MR. DAVIS:  Counsel, just take the

24   depositions of the witnesses in front of you.  I'm not

25   going to engage in any further discussion or argument

Page 13

1  or accusations with you regarding the availability of

2  witnesses.  We've already stated our position

3  regarding the availability of witnesses.  I don't have

4  anything further to say about it.

5         MR. BARRY:  Which is you get to

6  unilaterally dictate when.

7         MR. DAVIS:  That's not what I said.  You

8  can characterize it however you like.

9         MR. BARRY:  Well, I don't know how else to

10  characterize it if you don't return my phone calls.  I

11  mean, I made an effort to meet and confer with you and

12  was met with the discourtesy of not having a return

13  phone call.

14         MR. DAVIS:  Counsel, I think your letters

15  speak for yourself and they're fairly consistent with

16  the way you're speaking this morning.  The point is,

17  it's 9:30 in the morning.  You have a witness in front

18  of you.  You can either take the deposition or don't

19  take the deposition.  That's up to you.  I really

20  don't care.  But if we're going to waste anymore time,

21  should I let this witness go or do you want to take

22  her deposition?

23         MR. BARRY:  Oh, I want to take her

24  deposition, but I want you to make a clear record of

25  your client's failure to appear yesterday.

EXAMINATION BY MR. BARRY

1           I guess my final question to you would be

2    with respect to that.  Why, if it was your intention

3    all along to just kind of massage the schedule of

4    these depositions, did you send letters indicating you

5    were refusing to produce these witnesses until you

6    were put to your -- you were put to your strictest

7    proof in terms of what the legal and fashionable basis

8    for refusing to produce witnesses?  They were listed

9    in your 216A disclosure.

10          MR. DAVIS:  At this point, Counsel, I have

11   no idea what you're even talking about.  I'm certainly

12   not here to answer your questions.

13          MR. BARRY:  That doesn't surprise me given

14   the fact you haven't been involved in the case up

15   until this point.  Mr. Tillage and Mr. Scott have.

16   I'm just curious where those folks are today and why

17   they're not here to be respond?  Seems to be a problem

18   for you to respond to something you don't know

19   anything about.

20          EXAMINATION BY MR. BARRY:

21      Q.   All right.  Ms. Welch, thank you for your

22   patience.

23          Could you please state your name for the

24   record, please?

25      A.   Pamela Welch.

# EXHIBIT 10

# BARRY & SLADE, LLC

## PRACTICING EXCLUSIVELY IN THE AREA OF CONSUMER RIGHTS LAW

ATTORNEYS:
Peter F. Barry & Nicholas P. Slade
pbarry@lawpoint.com | nslade@lawpoint.com

Office: 612-379-8800
Toll-Free: 866-714-8800
Facsimile: 612-379-8810

2021 East Hennepin Ave., Suite 195
Minneapolis, MN 55413
www.lawpoint.com

February 23, 2007

## VIA EMAIL PDF ONLY

Mr. Charles Tillage, Esq.
Mr. Stephen Scott, Esq.
Hayes Davis Ellingson McLay Scott, LLP          ** URGENT **
203 Redwood Shores Parkway, Suite 480
Redwood Shores CA 94065

RE:   **Sanchez, et al. v. Client Services, Inc. et al.**
      **COURT FILE NO: 06-06280 PVT**
      **Our File No. 55267**

Dear Mssrs. Scott and Tillage:

Counsel, this email will memorialize my conversation in pertinent part with Mr. Tillage this afternoon. At the outset, let me thank you for your time and serious consideration of the matters discussed relative to the Plaintiffs' taking of depositions of the Defendants and their employees. Our conversation was an attempt on Plaintiffs' part to meet and confer in an effort resolve this impending discovery dispute without the necessity of Court intervention.

The Plaintiffs have noticed the depositions of the following persons, on the following dates, in the following sequence at Client Services, Inc. in St. Charles, Missouri for next week:

1.    Karla Davis - Feb. 28, 2007 at 9:00 a.m.
2.    30(b)(6) Witness - Feb. 28, 2007 at 1:00 p.m.
3.    Pamela Welch - Mar. 1, 2007 at 9:00 a.m.
4.    Judith Cummins - Mar. 1, 2007 at 11:00 a.m.
5.    Gayla Newlin - Mar. 1, 2007 at 1:00 p.m.
6.    William Watson - Mar. 1, 2007 at 3:00 p.m.
7.    Rich Weckl - Mar. 2, 2007 at 9:00 a.m.
8.    Brett Owens - Mar. 2, 2007 at 11:00 a.m.
9.    "TRL" Doe (unknown person) - Mar. 2, 2007 at 1:00 p.m.
10.   "CAD" Doe (unknown person) - Mar. 2, 2007 at 3:00 p.m.
11.   "JWS" Doe (unknown person) - Mar. 2, 2007 at 5:00 p.m.[1]

---

[1]   The Court's scheduling order permits no more than 10 depositions per side, but since the Defendants' have either refused, or been unable to identify, the actual names of the last three persons described only by initials, it is unclear whether or not these persons are duplicates of the

After serious discussion among these counsels, these dates were provided to us by email from Mr. Scott on January 26, 2007, in his email to the mediator in this case, which states in pertinent part:

> *This will confirm that we are available for mediation on either March 2nd or March 30th.  After our joint telephone conference yesterday, plaintiffs' counsel and I discussed deposition scheduling and it appears that the best (if not only) time that we can take depositions of Client Service witnesses in St. Louis are Feb. 28, March 1 and 2.  Ron and Pete indicated they wanted to complete these depositions before the mediation.  We have scheduled the 3 plaintiff depositions for Feb. 9 in San Jose.*

We have taken seriously the Defendants' need to depose our clients, as evidenced by our agreement to produce these clients early on in this case.  They testified fully and truthfully and your client had ample opportunity to explore the basis for their claims made herein.  Likewise, Plaintiffs expect the same from Defendants.

Mr. Scott's letter of February 22, 2007, seems to indicate, without explicating stating, that the Defendants and their counsel are refusing to produce anyone at deposition on February 28 through March 2, 2007, except for Ms. Karla Davis and the FRCP 30(b)(6) corporate designee.[2] This is not the plan that the Plaintiff's deposition notices have laid out.  While I appreciate my distinguished opposing counsels' desire to limit the discovery and scope of inquiry of their clients and the clients' employees, Plaintiff respectfully declines to go along with this agenda.[3]

Instead, Plaintiffs and their counsel intend to take the depositions of those persons they have previously noticed to Defendants, and on the dates and times indicated on the deposition notices

---

earlier cited depositions.  Mr. Scott previously committed to identify these persons to us, but has not done so.

[2] Mr. Tillage clarified and confirmed to this counsel that Defendants would not permit the taking of depositions of anyone except Ms. Davis and the 30(b)(6) corporate designee.

[3] Mr. Tillage also indicated that Ms. Davis would not be available until Friday, March 2, 2007. This availability is completely contrary to the planned execution of these depositions.  The idea was to depose Ms. Davis first, the 30(b)(6) designee second, and then hopefully push through the remaining employees fairly quickly in an effort to complete the depositions in two days, rather than three, and as requested by Mr. Scott.  Defendants attempts to unilaterally reconfigure these dates leave Plaintiff's counsel with nothing to do on Wednesday and force us to stay over on Friday, when this may be totally unnecessary.  We are not unreasonable, but we also have explicitly relied upon your representations as to dates and availability of the persons to be deposed.  Changing those dates with less than 5 days notice is patently unfair and prejudicial to the Plaintiffs (not to mention that the airlines and hotels are relatively unforgiving with these sorts of last minute changes).

February 23, 2007

summarized above.  Of course, in the event that a particular deposition completes earlier than the times shown, we will endeavor to move the schedule along more quickly, subject to the availability of the Defendants and their employee deponents.  We do not seek to spend any more time or resources in gathering testimony than is necessary to fully and fairly litigate our case.

To summarize, in the event that the corporate Defendant refuses to produce these employee deponents who are within their employment and control, on the dates and times as agreed to and noticed in the deposition notices, Plaintiffs will appear, make a record of such refusal, and proceed to move the Court to compel production of these deponents, seeking their reasonable and necessary attorney's and costs arising therefrom.  I genuinely hope that this is not necessary.

To date, Defendants have not noticed or moved the Court for a protective order to prevent or limit the taking of these depositions, or to modify the previously agreed deposition schedule. Plaintiffs' counsels have both purchased non-refundable hotel and plane reservations for these depositions and in the absence of such a protective order, we intend to take the depositions as noticed.

Thank you for your professional courtesies and please let me know if I may be of service in responding to any questions you might have about this matter.

Sincerely,

**BARRY & SLADE, LLC**

Peter F. Barry, Esq.
Attorney at Law

PFB:ra

# EXHIBIT 11



# HAYES
# DAVIS
# BONINO
# ELLINGSON
# McLAY
# SCOTT, LLP

ATTORNEYS AT LAW

203 Redwood Shores Parkway, Suite 480
Redwood Shores, California 94065
Telephone: 650.637.9100
Telephone: 650.637.9100
Facsimile: 650.637.8071
www.hayesdavis.com

## FACSIMILE COVERSHEET

**Date:**     February 26, 2007

| NAME | FAX NO. | PHONE NO. |
|------|---------|-----------|
| Ronald Wilcox<br>LAW OFFICES OF RONALD WILCOX | 408.296.0486 | 408.296.0400 |
| Pete Barry<br>BARRY & SLADE, LLC | 612.379.8810 | 612.379.8800 |

| | | | |
|---|---|---|---|
| **FROM:** | Brian R. Davis | **PHONE:** | 650.637.9100 |
| **RE:** | **SANCHEZ v. CLIENT SERVICES** | **# PAGES:** | |
| **SENT BY:** | Cynthia Thomas | **PHONE:** | 650.637.9100 |

**Comments:**

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMISSION CONTAIN INFORMATION FROM THE LAW FIRM OF HAYES, DAVIS, BONINO, ELLINGSON, McLAY & SCOTT LLP WHICH IS CONFIDENTIAL OR PRIVILEGED. THE INFORMATION IS INTENDED TO BE FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET.  IF YOU ARE NOT THE INTENDED RECIPIENT, BE AWARE THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THE CONTENTS OF THIS FAXED INFORMATION IS PROHIBITED.  IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE ORIGINAL DOCUMENTS AT NO COST TO YOU.

Silicon Valley • San Francisco • Los Angeles • Sacramento



# HAYES
# DAVIS
# BONINO
# ELLINGSON
# McLAY
# SCOTT, LLP

ATTORNEYS AT LAW

203 Redwood Shores Parkway, Suite 480
Redwood Shores, CA 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071
www.hayesdavis.com

February 26, 2007

**VIA FACSIMILE & U.S. MAIL**

Ronald Wilcox
**LAW OFFICE OF RONALD WILCOX**
2160 The Alameda, 1st Floor, Suite F
San Jose, CA 95126

Pete Barry
**BARRY & SLADE, LLC.**
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN 55413-2700

> **Re:   Sanchez v. Client Services**

Counsel:

We herein respond to your correspondence of February 23, 2007, regarding plaintiffs' eleven (11) separate deposition notices.

We respectfully disagree with your stated position that plaintiff's are entitled to take the depositions of all these witnesses. As we have previously stated, other than Karla Davis and Client Services' FRCP 30(b)(6) witness, the depositions of the other nine witnesses noticed by plaintiffs are excessive, unnecessary, and will produce information or evidence which is relevant or admissible on the subject claims presented by the plaintiffs in this case.

Although there was previous discussion and tentative agreement to arrange the depositions of these other witnesses, it became clear for the first time that these witnesses do not possess information or evidence which is relevant or admissible based on the plaintiffs' deposition testimony of February 9, 2007. In addition, it is also clear from the caller log (which has been provided to you), that many of these employees never communicated with plaintiffs.

Furthermore, we continue to stand by our analysis and position that any alleged conduct by Client Services' employees which occurred prior to October 6, 2005, is barred by the one-year statute of limitations under the FDCPA. The only employee who had contact with the plaintiffs after that date was Karla Davis. The potentially different statute of limitations applicable to plaintiffs' state tort claims does not change the analysis or conclusion



## HAYES
## DAVIS
## BONINO
## ELLINGSON
## McLAY
## SCOTT, LLP

ATTORNEYS AT LAW

In any event, and without waiving any objections, we will produce all of the witnesses for deposition this week (with the exception of those identified only by initials). The witnesses will be available and presented for deposition on Thursday-Friday, March 1-2, 2007. In particular, the PMK witness will be available on Thursday and Karla Davis will be available on Friday.[1]

Sincerely,



Brain R. Davis

---

[1]    As you know, Ms. Davis is no longer an employee of Client Services and she now resides approximately 500 miles away from the location you have noticed her deposition. But, at our client's expense, we will make Ms. Davis available for her deposition on Friday, March 2, 2007, at the location you have selected. Due to other commitments, Friday, March 2nd is the only day she is available this week for her deposition.

# EXHIBIT 12

# BARRY & SLADE, LLC

### PRACTICING EXCLUSIVELY IN THE AREA OF CONSUMER RIGHTS LAW

ATTORNEYS:
Peter F. Barry & Nicholas P. Slade
pbarry@lawpoint.com | nslade@lawpoint.com

Office: 612-379-8800
Toll-Free: 866-714-8800
Facsimile: 612-379-8810

2021 East Hennepin Ave., Suite 195
Minneapolis, MN 55413
www.lawpoint.com

February 26, 2007

### VIA EMAIL PDF ONLY

Mr. Charles Tillage, Esq.
Mr. Brian Davis, Esq.
Mr. Stephen Scott, Esq.                    ** URGENT **
Hayes Davis Ellingson McLay Scott, LLP
203 Redwood Shores Parkway, Suite 480
Redwood Shores CA 94065

RE:    **Sanchez, et al. v. Client Services, Inc. et al.**
       **COURT FILE NO: 06-06280 PVT**
       **Our File No. 55267**

Dear Mssrs. Scott, Tillage and Davis:

I am in receipt of your letter of today, February 26, 2007, wherein you assert that you will not produce any of the noticed witnesses for deposition on Wednesday, February 28, 2007. This is alarming to me given that my co-counsel and I have booked flights as well as hotel rooms for tomorrow night, which your unilateral actions have rendered useless. You have decided unilaterally that our time on Wednesday is to be non-productive, out-of-the office, and away from our family with legal or factual justification under the Federal Rules of Civil Procedure or any other controlling authority.[1]

Moreover, as to your assertions that you somehow have the right to dictate whom we depose, I gently redirect your attention to *Joseph v. J.J. McIntyre*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003). *McIntyre* holds that the limitations period for a claim regarding a series of abusive collection phone calls was subject to the "continuing violation" doctrine, because much like a hostile work environment claim, a pattern of harassing conduct could not have been said to occur on any particular day. Likewise, the pattern of harassing conduct suffered by our clients did not occur precisely one year before the filing of this case.

---

[1] On a personal note, I do not appreciate the fact that I am being forced to be away from my 6-month old baby daughter a day longer than is necessary because of you client's discovery misconduct. Your firm's continued refusal to acknowledge this palpable personal discourtesy to counsel, after we promptly produced all three Plaintiffs for their depositions at your designated date and time earlier this month, has its remedy in the Rules, no doubt.

Page 2                                                              February 26, 2007

You have failed to move for an appropriate protective order and have refused to offer reimbursement for either a change in our flight or hotel schedule, after having provided us with these dates and allowed us to book travel arrangements. Indeed, you have not obtained a protective order to prevent and/or limit the depositions from being taken as noticed (Wednesday, Thursday and Friday), a requirement in the Ninth Circuit. To exacerbate matters further, two attorneys have also now appeared in this case who have not noticed their appearances with the Federal Court, according to the PACER docketing system as of this afternoon. This behavior of changing players every 15 minutes is both tiring and not permitted under the Rules. If you have input on this case, then I respectfully suggest that you notice your appearance with the Court as required by the Rules.

This letter will reconfirm our previously stated position, that we will appear at the previously designated and noticed date and time, to take the depositions of those persons whom you previously agreed to produce, and in the order in which we have noticed them. If they are not produced according to our notices, we will move the Court for an order to compel your client to produce these persons, and we will seek our attorney's fees and costs as a sanction for your proposed discovery abuse. *See* Fed. R. Civ. P. 37.

Thank you for your professional courtesies.

Sincerely,

**BARRY & SLADE, LLC**

Peter F. Barry, Esq.
Attorney at Law

PFB:ra

EXHIBIT 13

**Expedia.com**

## Changing your itinerary

OPTIONS

· Return to previous

If you need to cancel or change your travel plans, you can find the help you need here. If you still have any questions or concerns about your itinerary, use our support and feedback form. We'll respond within 4 hours.

### Changing or canceling a flight

If your travel plans change and you need a different flight, you can change your flight times, dates, and/or destination. Most airlines do not allow changes to traveler name(s) on a ticket.

You can make changes to your flight online if:

- You have a user name and password from Expedia
- You were issued an e-ticket for your flight
- You are traveling on a flight originating in the US
- All your flights are on a single major US airline
- All the passengers on your itinerary are making the same flight change

If you no longer need a flight, or if you are unsure of your travel plans, then you should cancel your flight. You will receive credit that can be used at a later time (for up to 1 year) towards the purchase of a new flight. To receive credit, you must cancel your flight before the departure date.

**Penalties**
Most fares have an airline-imposed fee of $100 per passenger for changes and cancellations, plus any applicable increase in the fare. We will provide a comprehensive summary of all charges before you change or cancel your flight.

**How to get started**
To find out how to change or cancel your flight, go to **My Itineraries** and open the itinerary that contains the flight you wish to change or cancel. Click the **Find out how to change or cancel your flights** link located below the flight summary and follow instructions provided.

### Changing or canceling a hotel reservation

Lodging can be changed or canceled according to each property's rules and restrictions. Some properties impose penalties, such as one night's stay, if you cancel your reservation within a certain number of days before your scheduled check-in date. Other properties, such as Expedia Special Rate lodging, charge a small penalty for changes made any time after a room is booked.

To change or cancel a lodging reservation, go to **My Itineraries** and open the itinerary that contains the lodging you wish to change or cancel. Click **Cancel this reservation** and review the refund and penalty details.

### Changing or canceling a rental car reservation

Most rental car reservations can be canceled at any time without penalty. Car reservations cannot be changed, but you can cancel your existing car and add a different one to your itinerary. To cancel a rental car reservation, go to **My Itineraries** and open the itinerary that contains the reservation you wish to cancel. Click **Cancel this car reservation** and verify the cancellation on the resulting page.

If you wish to cancel a rental car that is part of a package, please review the specific rules and regulations in your itinerary.

### Changing or canceling a vacation package

Different cancellation and change rules apply to each vacation package. Factors include whether a flight was purchased (and, if so, which flight); how many days prior to the departure you are attempting to make the change or cancellation; and which hotel, rental car, and/or attractions were included. Most vacation packages cannot be canceled but can be changed for a $50 change fee, plus all additional supplier fees and penalties.

If your vacation package includes a flight, keep in mind that most economy/coach class flights have an airline-imposed penalty fee of $100 or more per passenger for changes and cancellations, plus any applicable increase in the fare. Tickets are nonrefundable, but can be applied (for a limited time) toward future travel with a vacation package, less any applicable penalties.

To change or cancel your vacation package, please call Customer Support at **1-800-EXPEDIA (1-800-397-3342) or 1-404-728-8787**.

### Changing or canceling a cruise

Each cruise line has its own rules and restrictions on changing or canceling a cruise. To make a change or cancellation, please call Customer Support at **1-800-EXPEDIA (1-800-397-3342) or 1-404-728-8787**.

**Expedia Information:**  about Expedia.com  |  press room  |  investor relations  |  Expedia, Inc. terms of use  |  privacy policy  |  become an affiliate  |  advertising  |  jobs
**Expedia Links:**  home  |  flights  |  hotels  |  cars  |  cruises  |  earn ThankYou Points  |  site map

Expedia, Inc. is not responsible for content on external Web sites. ©2007 Expedia, Inc. All rights reserved.
Photos: Getty Images, Corbis

Plus sign (+) means taxes and fees are additional.

Top Destinations Links:

| Airlines | Florida vacations | Amsterdam hotels | Hawaii | Business travel | Family vacations |
| Cheap flights | Hawaii vacations | Hotel reservations | Chicago | Europe travel | Caribbean vacations |
| Airline tickets | Mexico vacations | Luxury hotels | Las Vegas | Paris | Beaches |
| Car rentals | Orlando vacations | Rome hotels | New York | Travel deals | All-inclusive |

International sites:   Australia  |  Canada  |  China  |  Denmark  |  France  |  Germany  |  Italy  |  Japan  |  Netherlands  |  Norway  |  Spain  |  Sweden  |  United Kingdom

Partner sites:
100 Orlando Spots  | Big World Trips  | Boston Hotelier  | Citysearch  | ClassicVacations.com  | CondoSaver.com  | Cruises.net  | Entertainment.com  | Evite  | Gifts.com  | Hip City Hotels  | Hotels.com
Hotwire  | HSN  | ImprovementsCatalog.com  | LendingTree  | Match.com  | RealEstate.com  | ReserveAmerica  | San Francisco Hotelier  Ticketmaster  | Vacations.net

7/22/07 8:30 PM

# EXHIBIT 14

1

Ronald Wilcox, Esq., State Bar No. 176601

2   2160 The Alameda, Suite F, First Floor
San Jose, CA 95126

3   Tel: (408) 296-0400

4   Fax: (408) 296-0486

5   ATTORNEY FOR PLAINTIFFS

6              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA

7                  SAN JOSE DIVISION

8   _____

9   IRMA SANCHEZ, JORGE SANCHEZ,      )
AND SOPHIA SANCHEZ,               )        CIV. NO.  C06-06280 PVT

10                                    )
         Plaintiffs,                 )

11                                    )
12      v.                            )
                                     )
CLIENT SERVICES, INC. AND KARLA  )

13  DAVIS,                           )
                                     )
14                                   )
         Defendants.                 )

15  _____   )

16       SECOND AMENDED NOTICE OF TAKING THE DEPOSITION OF

17                      CLIENT SERVICES, INC.
              THROUGH ITS DESIGNATED WITNESSES

18            PURSUANT TO FED. RULE CIV. P. 30(b)(6)

19       Please take notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure,

20  Plaintiffs Irma Sanchez, Jorge Sanchez, and Sophia Sanchez, by and through their counsel, will

21  take the deposition of **Client Services, Inc.** through its officers, agents, employees or authorized

22  persons most qualified to testify with respect to the matters described below.  The deposition will

23  be taken before an authorized court reporter on **Thursday, April 12, 2007, beginning at**

24  **9:00 a.m. C.S.T. at the Embassy Suites Hotel, Two Convention Center Plaza, (Room TBA),**

25

**EXHIBIT**

Peterson #2
4-12-07  BJD

SECOND AMENDED NOTICE OF TAKING THE DEPOSITION OF CLIENT SERVICES, INC. THROUGH ITS
DESIGNATED WITNESSES PURSUANT TO FED. RULE CIV. P. 30(b)(6)

1    **St. Charles, MO 63303** and will continue until completed.  The deposition may be conducted

2    telephonically and may be recorded through stenographic and/or video means.

3            The designated witness(es) of Client Services, Inc. should be prepared to testify regarding

4    the following matters:

5        Client Services, Inc.'s communications relating to Plaintiffs;

6        The relationship between Client Services, Inc. and Plaintiffs;

7        The relationship between Client Services, Inc. and Discover Card;

8

9        4.   Determination and calculation of the amounts sought by Client Services, Inc.;

10       5.   Authority for the amounts claimed by Client Services, Inc.;

11       6.   All collection notes and/or collection logs relating to Plaintiffs;

12       7.   Documents sent to and/or received from Plaintiffs or anyone else regarding Plaintiffs;

13       8.   Client Services, Inc.'s collection practices, procedures, methods, techniques and

14            strategies used by Client Services, Inc. in their efforts to collect debts from any person;

15           Client Services, Inc.'s investigation into the claims made by Plaintiffs in their Complaint;

16           The details and contents of all personnel files for the individuals that worked on

17           Plaintiff's alleged account;

18           Any and all other information related to the factual basis for Client Services, Inc.'s

19           Answer;

20       12  Any and all other information related to Client Services, Inc.'s defenses contained in their

21           Answer;

22

23           Any bona fide error defense Client Services, Inc. may have with regard to the allegations

24           set forth in the Complaint;

25

14. The lack of intent by Client Services, Inc. to violate the Fair Debt Collection Practices Act;

15. The lack of intent by Client Services, Inc. to violate the California's Rosenthal Fair Debt Collection Practices Act;

16. The phone systems of Client Services, Inc. and monitoring and recording of telephone calls;

17. The telephone system(s), local and long distance services used by Client Services, Inc. and their employees in the course of their business or in the course of collecting accounts;

18. The long distance telephone provider used to make calls relating to the herein account;

19. The management, supervision, and discipline of Client Services, Inc. and its collection employees;

20. The maintenance of procedures by Client Services, Inc. to avoid violations of the Fair Debt Collection Practices Act;

21. The maintenance of procedures by Client Services, Inc. to avoid violations of the California's Rosenthal Fair Debt Collection Practices Act;

22. The maintenance of procedures by Client Services, Inc. to avoid violations of the California Rosenthal Fair Debt Collection Practices Act;

23. The methods, practices, techniques, and strategies used by Client Services, Inc. in training their collection employees;

24. All correspondence to and from the current creditor relating to this account;

25. All documentation methods, if any, whether computerized, manual, or other, of all activities undertaken by Client Services, Inc. or their employees related to the collection of accounts;

SECOND AMENDED NOTICE OF TAKING THE DEPOSITION OF CLIENT SERVICES, INC. THROUGH ITS DESIGNATED WITNESSES PURSUANT TO FED. RULE CIV. P. 30(b)(6)

26. The history, specific details, and resolution of any formal and informal complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations, mediations, arbitrations, or other actions, legal or otherwise, connected to or arising out of Client Services, Inc.'s business, in the period from three (3) years prior to the date of this notice to the present;

27. Any and all other information related to Plaintiffs' claims against Client Services, Inc.;

28. All documents produced to Plaintiffs by Client Services, Inc. in the course of this case;

29. All documents relating to Plaintiffs; and

30. All documents regarding the above matters, including, but not limited to, contracts or agreements between Client Services, Inc. and Discovery Card; all policy, procedure and training manuals, memoranda and other writings regarding collection activities of Client Services, Inc. which were in effect and used from January 1, 2005 to the present, and phone billing records relating to Plaintiff's account.

31. Client Services, Inc's annual sales, gross income, net income, and profit, for 2005 and 2006.

32. Client Services, Inc.'s net worth and financial condition.

**And bring with you:**

All documents responsive to the Request for Production of Documents and documents related to the paragraphs referenced immediately above.

Date: _4/9/07_

Ronald Wilcox, Attorney at Law
2160 The Alameda, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
ATTORNEY FOR PLAINTIFFS

1

## CERTIFICATE OF SERVICE

2      I, Tammy Gulla, hereby certify that on April 9, 2007 the foregoing document was sent by

3   facsimile and first class U.S. Mail to:

4

5              Phuong H. Nguyen
               Stephen A. Scott
6              Brian R. Davis
               Hayes, Davis, Bonino, Ellingson, McLay & Scott
7              203 Redwood Shores Parkway, Suite 480
               Redwood Shores, CA 94065
8              Fax: (650) 637-8071

9      ATTORNEYS FOR DEFENDANTS

10

11   Executed on April 9, 2007, in San Jose, California.

12                                              _____
                                                Tammy Gulla
13

14

15

16

17

18

19

20

21

22

23

24

25