# EXHIBIT 15

Page 6

1  met before.
2      A.  Yes, we have.
3      Q.  And so to the extent that my questions are
4  repetitive, I apologize.  It's a separate matter, so
5  I'm going to be probably asking you some questions I
6  already know the answer to --
7      A.  Okay.
8      Q.  -- but I need your testimony for.  I presume
9  that you understand my question if you answer it.  If
10  your counsel makes objections, I -- I presume you've
11  been deposed before.  I know at least you and I have
12  had one deposition.  So in the event your counsel
13  makes objections, we're going to try and endeavor not
14  to talk over him and allow him to instruct you as to
15  when and how to answer, or whether or not to answer.
16      MR. BARRY:  As -- just as a preliminary
17  matter, Madam Court Reporter, can I have you mark
18  that?  We're going to stay on the record for a minute,
19  Madam Court Reporter, and make this -- we're going to
20  make this Deposition Exhibit 2, just for
21  clarification.
22      MR. DAVIS:  That's fine.
23      [Marked Petersen Exhibit No. 2.]
24      MR. BARRY:  And so the other -- yesterday's
25  exhibit that we used in the Andrews case -- in the

Page 7

1  Andrews deposition and the Karla Davis deposition,
2  will be designated as Exhibit 1.  And this deposition
3  notice will be nominated as Exhibit 2 in this
4  deposition.
5      MR. DAVIS:  Agreed.
6      MR. BARRY:  Okay.
7      Q.  (By Mr. Barry) All right.  Mr. Petersen, I'm
8  showing you what's been previously marked as Petersen
9  Exhibit No. 2.  Can you take a look at that document
10  for me?
11      A.  Sure.
12      Q.  All right.  Have you seen that document
13  before today?
14      A.  Yes.
15      Q.  All right.  And I presume it was shown to
16  you by your attorneys?
17      A.  Yes.
18      Q.  All right.  In -- insofar as it -- an answer
19  requires you to reveal a communication you had with
20  your attorneys, I don't want you to reveal that.
21  You've got a right to -- to privilege between your
22  communications that you have with your attorneys, and
23  I'll respect that, and I want to respect that.
24      To the extent that you reviewed that notice
25  today, what I'd like you to do, if you could, if you

Page 8

1  could turn to Page 2 of that notice, and the
2  paragraphs enumerated from 1 through 32, could you,
3  just, with a -- do you have a pen?
4      All right.  We've got a pen there in front
5  of you.  If I could just have you read through that
6  document and then just indicate which topics you're
7  prepared to speak on today, by circling those topics.
8  And for the topics which you are not prepared to speak
9  on, simply place an "X" through the number, if you
10  would, for me.
11      A.  Okay.  (Witness complies.)
12      Q.  Just for clarification, if you -- and why
13  don't we make this simple?  Why don't you just place
14  an "X" through any topic that you're not prepared to
15  speak on today, if that makes it easier.
16      MR. DAVIS:  Counsel, can we go off the
17  record just for a second, just so we can -- I can work
18  through this with the witness?  Just take a minute.
19      MR. BARRY:  Well, if you want to take a
20  break, I --
21      MR. DAVIS:  Yeah, why don't we do that.
22  Just -- it'll just take a minute.
23      MR. BARRY:  All right.
24      MR. WILCOX:  Going off the record briefly
25  here at approximately 9:20 a.m.  We're still on Tape 1

Page 9

1  of Mr. Petersen.
2      (Whereupon a break was taken.)
3      MR. WILCOX:  We're going back on the record.
4  It's approximately 9:30 a.m.  We're still on Tape 1
5  for Mr. Petersen.
6      MR. DAVIS:  Counsel, in an effort to
7  streamline this, I'll just identify the few subjects
8  that he cannot testify regarding -- based on either
9  it's not within his knowledge base and/or it's a
10  privileged matter.  But the vast majority or any other
11  paragraphs I don't identify, he's prepared to testify
12  on.  Paragraphs 9, 11, 12, 13 and 27, of course, on
13  their face, are protected by the attorney/client
14  privilege and attorney-work product doctrine, in that
15  they ask for information related to the defenses in
16  this lawsuit, which are not appropriate for deposition
17  examination of a PMK witness.
18      No. 10, as we've been asserting all along,
19  would violate the privacy rights of the employees into
20  the contents of their personnel files, with the
21  exception as we've allowed each witness to testify
22  regarding those contents if it in any way involved the
23  Sanchez matter.
24      And then Paragraph 26, this witness is not a
25  witness that has that information in his knowledge

3 (Pages 6 to 9)

1  base, so he can't testify on that.
2       And then just finally, Paragraphs 31 and 32,
3  we would assert the confidentiality and privacy rights
4  of the company to their financial information and that
5  it wouldn't be relevant or admissible in this case.
6  And, in any event, he wouldn't -- it wouldn't be
7  within his knowledge base, anyway, since he doesn't
8  perform a financial role within the company.
9       But with respect to all other paragraphs,
10  which, of course, is the vast majority of them, he is
11  prepared to testify.
12       Q.  (By Mr. Barry) All right.  Mr. Petersen, your
13  counsel has lodged a statement and some objections.
14       MR. BARRY:  May I take a look at that
15  Exhibit 2, please?  Mr. Davis, who else are you
16  putting up today as 30(b)(6)?
17       MR. DAVIS:  Just Mr. Petersen.
18       MR. BARRY:  There's no other person?
19       MR. DAVIS:  No.
20       Q.  (By Mr. Barry) Okay.  Mr. Petersen, your
21  counsel's lodged some objections to -- to our areas of
22  inquiry, as well as some statements regarding the
23  limitations of your knowledge with respect to certain
24  issues.
25       Did you understand what your counsel said --

1       A.  Yes.
2       Q.  -- and do you agree with that?
3       A.  Yes.
4       Q.  Okay.  I'm going go through these.  I assume
5  1, 2 and 3, I think we had kind of a mix-up.  Those
6  are not --
7       A.  Yeah.
8       Q.  -- stricken?
9       A.  Those are not, right.
10       Q.  As to Topic No. 9, your client -- or rather
11  your counsel -- I didn't want to misstate his
12  objection -- but my understanding is as to Topic 9,
13  Client Services' investigation of the claims made by
14  plaintiff in their complaint, your counsel's asserting
15  attorney/client privilege with respect to that; is
16  that correct?
17       A.  Yes.
18       Q.  And you're following your client -- your --
19  excuse me -- your counsel's advice not to answer my
20  questions with regard to that?
21       A.  Yes.
22       Q.  Okay.  And as to Topic No. 10, the details
23  and contents of the personnel files for the
24  individuals that worked on plaintiffs' alleged
25  account, Topic No. 10, your counsel has stated that

1  there's a privacy objection made to that, and it's
2  indicated that you won't answer questions with regard
3  to that; is that correct?
4       A.  Yes.
5       Q.  And --
6       MR. DAVIS:  If I could just -- except to the
7  extent any of that would involve the Sanchez account,
8  in particular.
9       Q.  (By Mr. Barry) Okay.  You heard your
10  counsel's objection, and do you agree with that
11  objection --
12       A.  Yes.
13       Q.  -- and you're going to follow the advice of
14  your counsel and not answer my questions with regard
15  to that topic?
16       A.  Yes.
17       Q.  All right.  And with respect to Topic 11,
18  any and all other information related to the factual
19  basis for Client Services' answer, your counsel has
20  indicated that you are not going to answer my
21  questions based in part on attorney/client privilege;
22  is that correct?
23       A.  Yes.
24       Q.  And are you going to follow the advice of
25  your counsel and not answer my questions with regard

1  to Topic 11?
2       A.  Yes.
3       Q.  All right.  Topic 12, any and all other
4  information related to Client Services' defenses
5  contained in their answer, your counsel has indicated,
6  again, that that's an attorney/client privilege matter
7  and -- in part, and that he's instructing you not to
8  answer my questions with regard to Paragraph 12; is
9  that correct?
10       A.  Yes.
11       Q.  And are you going to follow the advice of
12  your counsel and not answer my questions with regards
13  to Topic 12?
14       A.  Yes.
15       Q.  All right.  And as to Topic 13, any
16  bona fide error or defense Client Services may have
17  with regard to the allegations set forth in the
18  complaint, I believe your attorney -- I don't want to
19  misstate this -- I believe your attorney indicated
20  that answering my questions with regard to that would
21  require disclosure of attorney/client privilege
22  material, and, therefore, you're not going to answer
23  any questions with regard to that; is that correct?
24       A.  Yes.
25       Q.  And you're going to follow the advice of

Page 14

1   your counsel and not answer my questions with regard
2   to Topic 13?
3       A.   Yes.
4       Q.   All right.  As to Topic 26, which reads,
5   "The history, specific details, and resolution of any
6   formal and informal complaints, Better Business Bureau
7   complaints, lawsuits, regulatory actions, claims,
8   mediations, arbitrations, or other legal actions,
9   legal or otherwise, connected to or arising out of
10  Client Services, Incorporated's business in a period
11  from three years prior to the date of this notice to
12  the present," I believe your counsel stated that
13  you're unprepared to testify on that, because you have
14  no specific knowledge of that topic; is that correct?
15      A.   Yes.
16          MR. DAVIS:  It's also in part -- only in
17  part protected by attorney/client and attorney-work
18  product, in the sense that it may concern -- or I
19  think it actually does concern other litigation, as
20  well.
21      Q.   (By Mr. Barry) And your counsel, Mr. Davis,
22  has indicated an additional objection.  And you heard
23  that objection?
24      A.   Yes.
25      Q.   And you understand that objection?

Page 15

1       A.   Yes.
2       Q.   And you're going to follow -- are you going
3   to follow your counsel's advice and not answer my
4   questions with regard to Topic 26?
5       A.   Yes.
6       Q.   Are you aware of any person at Client
7   Services who is capable of answering those topics with
8   respect to Paragraph 26?
9       A.   Yes.
10      Q.   All right.  And who would that person be?
11      A.   Kerry Simpson.
12      Q.   And Ms. Simpson is present in the room
13  today --
14      A.   Yes.
15      Q.   -- is that correct?  All right.  And she's
16  the general counsel for Client Services?
17      A.   Yes.
18      Q.   All right.  And she's also representing you
19  here today as an attorney?
20      A.   Yes.
21      Q.   Okay.  The -- as to Paragraph 27, any and
22  all information related to plaintiffs' claims against
23  Client Services, Incorporated --
24          MR. BARRY:  I apologize, Counsel Davis.
25  I --

Page 16

1           MR. DAVIS:  I -- I didn't include 27.  I'm
2   sorry.  Twenty-seven is a subject that he's going to
3   testify on.
4           MR. BARRY:  Okay.  So we should -- we should
5   correct that.
6       Q.   (By Mr. Barry) What I'll have you do is
7   just -- especially with -- why don't we just do this as
8   to 27, and 1, 2 and 3, we'll just have you --
9       A.   Initial it?
10      Q.   Yeah.  Why don't you just strike out the
11  "X," the "X" out on 27 and initial it.  And then on 1,
12  2 and 3, as well, just so the record's clear.
13          So to clarify on the record, the deponent
14  has initialed 27, 1, 2 and 3, as topics that he will,
15  in fact, testify about here today.
16          All right.  And with respect to Topic 31,
17  which reads, "Client Services, Incorporated's annual
18  sales, gross income, net profit" -- excuse me -- "net
19  income and profit for 2005 and 2006," your counsel
20  today has asserted an objection based upon the
21  defendant's privacy rights, I believe.  And did you
22  understand that objection?
23      A.   Yes.
24      Q.   And do you agree with that objection?
25      A.   Yes.

Page 17

1       Q.   Are you going to follow your counsel's
2   advice and not answer my questions with regards to
3   Topic 31?
4       A.   Yes.
5       Q.   And with respect to Topic 32, Mr. Petersen,
6   Topic 32 reads, "Client Services, Incorporated's net
7   worth and financial condition," and your counsel,
8   Mr. Davis, interposed an objection with respect to,
9   again, I believe to the privacy rights with respect to
10  that topic.
11      A.   Yes.
12      Q.   Did you understand that objection?
13      A.   Yes.
14      Q.   Do you agree with that objection?
15      A.   Yes.
16      Q.   And are you following your counsel's advice
17  not to answer my questions with regard to Client
18  Services' net worth and financial condition?
19      A.   Yes.
20      Q.   Okay.
21          MR. DAVIS:  I just wanted to add also,
22  counsel, with respect to 31 and 32, in addition to
23  the -- the privacy and related rights the corporate --
24  the corporation has to their financial information,
25  even if it wasn't protected by privilege, it's not

1  within this witness' knowledge base, in any event.
2      Q.  (By Mr. Barry) All right.  And, Mr. Petersen,
3  your counsel, Mr. Davis, has interposed an additional
4  objection as to Topics 31 and 32, in effect saying that
5  this is something outside of your purview of knowledge;
6  is that correct?
7      A.  Yes.
8      Q.  All right.  And so on that basis, you're
9  unable to testify as to Topics 31 and 32 today, as
10  well as being unwilling to testify about them even if
11  you could?
12      A.  Yes.
13      Q.  All right.  And you're going to follow your
14  counsel's advice and not answer my questions with
15  regard to Topics 31 and 32?
16      A.  Yes.
17      Q.  All right.  What person at Client Services
18  could testify competently about Topics 31 and 32?
19      A.  Possibly our CFO.
20      Q.  And who is that person?
21      A.  Brad Franta.
22      Q.  And could you spell Mr. Franta's name,
23  please?
24      A.  F-R-A-N-T-A.
25      Q.  Just as a preliminary information, accurate

1  information, you're a resident here of St. Louis?
2      A.  St. Charles.
3      Q.  St. Charles.  And how long have you lived
4  here in St. Charles?
5      A.  Approximately 20 years.
6      Q.  And my understanding is, as I recollect,
7  you've got a Bachelor's degree from --
8      A.  Missouri Baptist University.
9      Q.  And have you lived anywhere else besides
10  Missouri?
11      A.  Yes.
12      Q.  Okay.  Where else?
13      A.  Born and raised in Wisconsin.
14      Q.  Okay.  And when did you move to Missouri?
15      A.  I came to college about -- between 17 and 18
16  years old.  I attended college here.
17      Q.  Okay.  And how old a person are you?
18      A.  Forty.
19      Q.  How long have you worked for Client
20  Services?
21      A.  Sixteen years.
22      Q.  And prior to your -- prior to your testimony
23  here today, did you review any documents in
24  preparation for your testimony?
25      A.  Yes.

1      Q.  Okay.  What documents did you review?
2      A.  The collection notes and the interrogatories
3  that -- that we just reviewed.
4      Q.  Okay.  And take a look at the Exhibit 1
5  there.  I'm showing you what's been previously marked
6  as Karla Davis and Andrews' Deposition Exhibit 1.
7  We're also going to mark that deposition Petersen
8  Deposition Exhibit 1, as well.  And I'm going to ask
9  the court reporter if she'll do that right now for me.
10      [Marked Petersen Exhibit No. 1.]
11      Q.  (By Mr. Barry) All right.  If you could just
12  page through that for me.
13      A.  Uh-huh.
14      Q.  Are those the collection notes to which you
15  referred in your earlier answer?
16      A.  Yes.
17      Q.  Okay.  So you reviewed the Exhibit 1
18  collection notes in preparation for your testimony
19  today, correct?
20      A.  Yes.
21      Q.  All right.  And did you read through the
22  call entries on there?
23      A.  Yes.
24      Q.  Okay.  Did you find any errors in those call
25  entries?

1      A.  No.
2      Q.  Did you find any mistakes in the way this
3  account was handled?
4      A.  No.
5      Q.  Did anybody make any -- as far as you could
6  tell, did -- did any employee of Client Services make
7  any mistakes with regard to how they collected under
8  the Fair Debt Collection Practices Act?
9      A.  No.
10      Q.  In your review of those notes, Mr. Petersen,
11  did you determine whether or not any employee of
12  Client Services made any mistakes or errors with
13  regard to the California Rosenthal Fair Debt
14  Collection Practices Act?
15      A.  No.
16      Q.  Okay.  Just to lay some additional
17  foundation, when we talk today, I'm going to be
18  referring to the Federal Fair Debt Collection
19  Practices Act as the FDCPA.
20      A.  Okay.
21      Q.  All right?  And I'll refer to the California
22  Fair Debt Collection Practices Act as the California
23  Rosenthal FDCPA.  All right?  Or the California FDCPA.
24      A.  Okay.
25      Q.  Okay?  And I'll try very hard not to change

# EXHIBIT 16



**HAYES**
**DAVIS**
**BONINO**
**ELLINGSON**
**McLAY**
**&SCOTT, LLP**

ATTORNEYS AT LAW

203 Redwood Shores Parkway, Suite 480
Redwood Shores, CA 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071
www.hayesdavis.com

April 27, 2007

Ronald Wilcox
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Floor, Suite F
San Jose, CA 95126

Pete Barry
BARRY & SLADE, LLC.
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN 55413-2700

    Re:   **Sanchez (Irma, Jorge, Sophia) v. Client Services, Inc., Davis (Karla)**

Counsel:

    We herein continue our meet-and-confer discussions and efforts with both of you regarding the depositions of Client Services' witnesses in this action. In particular, the recent deposition of the Client Services' Person Most Knowledgeable pursuant to Federal Rules of Civil Procedure, Rule 30(b)(6).

    As you know, plaintiffs have taken and completed the depositions of eight Client Services' current and former employees, and the deposition of the 30(b)(6) witness (a total of nine depositions). All of these employee witnesses have provided complete, candid and credible testimony which rebuts, contradicts and refutes the allegations contained in the plaintiffs' complaint. The witnesses have also testified and confirmed that they have no prior complaints regarding their collection efforts and that their respective personnel files do not contain any complaints regarding their collection efforts in general, or their collection efforts on the Sanchez account in particular.

    In any event, we herein (again) attempt in good faith to resolve any outstanding disputes with you concerning deposition discovery and, similarly, respond to any planned discover motions.

Silicon Valley • San Francisco • Los Angeles • Sacramento



HAYES
DAVIS
BONINO
ELLINGSON
McLAY
& SCOTT, LLP

ATTORNEYS AT LAW

## Client Service's Person Most Knowledgeable/30(b)(6) Witness

As you know, Client Services produced its Personal Most Knowledgeable/30(b)(6) witness (Jerry Petersen) for deposition on Thursday, April 12, 2007, at Embassy Suites Hotel, in St. Charles, Missouri.[1] Mr. Petersen was fully prepared and provided comprehensive testimony regarding twenty-three of the thirty-two categories designated in plaintiffs' 30(b)(6) deposition notice. The analysis below will address each of the objections for the nine remaining categories for which testimony was objected to by Client Services.

### Category 9

Category 9 asks for "Client Services, Inc.'s investigation into the claims made by Plaintiffs in their Complaint." Obviously, this category seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[2]   Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[3]

Here, plaintiffs improperly seek discovery into the nature, extent, substance, content and conclusions of the investigation was conducted by Client Services after it was served with plaintiffs' lawsuit and in preparation of the defense. This proposed discovery necessarily involves and seeks disclosure of the defendants' litigation strategy in responding to the present action. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

---

[1]   Contrary to your anticipated arguments that Client Services caused a delay in the commencement of the deposition, we and our clients arrived at the designated hotel at approximately 9:45 a.m., but there was no conference or meeting room reserved for the deposition. Consequently, we searched the hotel in an effort to locate the conference or meeting room for the deposition, and even checked with the front desk receptionist, but there was no information available regarding the location. Finally, I called your office and was informed by your assistant that the deposition would take place in your hotel room. In the event there are any further depositions in Missouri, we recommend plaintiffs reserve a separate conference or meeting room to avoid the interruptions and inconvenience associated with conducting a deposition in a private hotel room.

[2]   Clarke v. American Commerce Nat. Bank (9th Cir. 1992) 974 F.2d 127, 129

[3]   Federal Rules of Civil Procedure, Rule 26(b)(3); see Hickman v. Taylor (1947) 329 US 495, 511



HAYES
DAVIS
BONINO
ELLINGSON
McLAY
&SCOTT, LLP

ATTORNEYS AT LAW

### Category 10

Category 10 asks for "<u>The details and contents of all personnel files for the individuals that worked on Plaintiffs' alleged account</u>." This category seeks discovery of information and documents which are protected by the employees' respective constitutional, statutory, and common law rights to privacy in their personnel matters.[4]

Furthermore, there is no information contained in the personnel files that has any relevance or admissibility in this case. As you may recall, each of the witnesses who had involvement in the underlying subject collection have all independently testified that they were not the subject of any discipline or evaluation based on their collection efforts on the Sanchez account.[5] Consequently, there is no discoverable information contained in their respective employment personnel files.

Moreover, plaintiffs improperly seek to invade the private personnel files of Client Services' current and former employees without valid basis. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

### Category 11

Category 11 asks for "<u>Any and all other information related to the factual basis for Client Services, Inc.'s Answer</u>." This category seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[6] Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[7]

Here, plaintiffs improperly seek discovery into the nature, extent, substance, content and conclusions of the investigation was conducted by Client Services after it was served with plaintiffs' lawsuit and in preparation of the defense. This proposed

---

[4] <u>Matter of Hawaii Corp.</u> (D HI 1980) 88 FRD 518, 524; <u>Board of Trustees v. Superior Court</u> (1981) 119 Cal.App.3d 516, 528–530

[5] The reason there is no information in the personnel files is simple—the allegations of misconduct as alleged in plaintiffs' complaint did not occur.

[6] <u>Clarke v. American Commerce Nat. Bank</u> (9th Cir. 1992) 974 F.2d 127, 129

[7] Federal Rules of Civil Procedure, Rule 26(b)(3); <i>see</i> <u>Hickman v. Taylor</u> (1947) 329 US 495, 511

Silicon Valley • San Francisco • Los Angeles • Sacramento



**HAYES
DAVIS
BONINO
ELLINGSON
McLAY
◈SCOTT, LLP**

ATTORNEYS AT LAW

discovery necessarily involves and seeks disclosure of the defendants' litigation strategy in responding to the present action. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

### Category 12

Category 12 asks for "<u>Any and all other information related to Client Services, Inc.'s defenses contained in their Answer.</u>" This category seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[8] Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[9]

Here, plaintiffs improperly seek discovery into the nature, extent, substance, content and conclusions of the investigation was conducted by Client Services after it was served with plaintiffs' lawsuit and in preparation of the defense. This proposed discovery necessarily involves and seeks disclosure of the defendants' litigation strategy in responding to the present action. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

### Category 13

Category 13 asks for "<u>Any bona fide error defense Client Services, Inc. may have with regard to the allegations set forth in the Complaint.</u>" This category seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[10] Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[11]

---

[8]  <u>Clarke v. American Commerce Nat. Bank</u> (9th Cir. 1992) 974 F.2d 127, 129
[9]  Federal Rules of Civil Procedure, Rule 26(b)(3); *see* <u>Hickman v. Taylor</u> (1947) 329 US 495, 511
[10]  <u>Clarke v. American Commerce Nat. Bank</u> (9th Cir. 1992) 974 F.2d 127, 129
[11]  Federal Rules of Civil Procedure, Rule 26(b)(3); *see* <u>Hickman v. Taylor</u> (1947) 329 US 495, 511

Silicon Valley • San Francisco • Los Angeles • Sacramento



HAYES
DAVIS
BONINO
ELLINGSON
McLAY
& SCOTT, LLP

ATTORNEYS AT LAW

Here, plaintiffs improperly seek discovery into the nature, extent, substance, content and conclusions of the investigation was conducted by Client Services after it was served with plaintiffs' lawsuit and in preparation of the defense. This proposed discovery necessarily involves and seeks disclosure of the defendants' litigation strategy in responding to the present action. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

**Category 26**

Category 26 asks for "The history, specific details, and resolution of any formal and informal complaints, Better Business Bureau Complaints, lawsuits, regulatory actions, claims, litigations, mediations, arbitrations, or other actions legal or otherwise, connected to or arising out of Client Services, Inc.'s business, in the period from three (3) years prior to the date of this notice to the present." This category is objectionable on many grounds including relevance, confidentiality, vague and ambiguous.

This category also seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[12] Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[13]

Furthermore, the information sought regarding other claims, complaints, lawsuits, etc., is not relevant to or admissible in support of the Sanchez claims in this action.[14] Any such lawsuits, regulatory actions, claims, litigation, mediations, arbitrations, etc., assuming there are any, would probably also be subject to confidential agreements with other parties.[15]

The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject.

---

[12] Clarke v. American Commerce Nat. Bank (9th Cir. 1992) 974 F.2d 127, 129
[13] Federal Rules of Civil Procedure, Rule 26(b)(3); see Hickman v. Taylor (1947) 329 US 495, 511
[14] Federal Rules of Civil Procedure, Rule 26(b)(1);
[15] Phillips ex rel. Estates of Byrd v. General Motors Corp. (9th Cir. 2002) 307 F.3d 1206, 1211.

HAYES
DAVIS
BONINO
ELLINGSON
McLAY
&SCOTT, LLP

ATTORNEYS AT LAW

### Category 27

Category 27 asks for "Any and all other information related to Plaintiffs' claims against Client Services, Inc." This category seeks discovery of information and documents which are protected by the attorney-client privilege and attorney work-product doctrine. The information and communications between an attorney and client that involve the investigation and litigation strategy of a particular case are protected from discovery under the attorney-client privilege.[16] Furthermore, the work-product doctrine protects from discovery the trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews.[17]

Here, plaintiffs improperly seek discovery into the nature, extent, substance, content and conclusions of the investigation was conducted by Client Services after it was served with plaintiffs' lawsuit and in preparation of the defense. This proposed discovery necessarily involves and seeks disclosure of the defendants' litigation strategy in responding to the present action. The objections to this category were properly made on the record at the deposition and previously provided to you in writing. Therefore, the defendants can not and will not provide testimony regarding this category and subject

### Categories 31 and 32

Category 31 asks for "Client Services, Inc.'s annual sales, gross income, net income, and profit, for 2005 and 2006." Category 32 asks for "Client Services, Inc.'s net worth and financial condition." The category seeks discovery of information and documents which are premature and not relevant at this early stage of litigation because Client Services' net income and worth is not admissible in the Sanchez action. To the extent this information is sought in support of plaintiffs' punitive damages claim, such damages are not recoverable under the Fair Debt Collection Practices Act.[18]

Furthermore, because the FDCPA does not provide for recovery of punitive damages, California law controls the prayer for punitive damages. Plaintiffs' insubstantial State law claims can hardly be said to satisfy the requirements that there be clear and

---

[16] Clarke v. American Commerce Nat. Bank (9th Cir. 1992) 974 F.2d 127, 129

[17] Federal Rules of Civil Procedure, Rule 26(b)(3); see Hickman v. Taylor (1947) 329 US 495, 511

[18] Wood v. Midland Credit Management, Inc. 2005 WL 3159639 (C.D.Cal.,2005) ; see also Gervais v. O'Connell, Harris & Associates, Inc., 297 F.Supp.2d 435, 440 (D.Conn.2003); Boyce v. Attorney's Dispatch Service, C-39-94-397, WL 33495605, at 2 (S.D. Ohio April 27, 1999); Aronson v. Creditrust Corp., 7 F.Supp.2d 589, 594 (W.D.Pa.1998).



HAYES
DAVIS
BONINO
ELLINGSON
McLAY
&SCOTT, LLP

ATTORNEYS AT LAW

convincing evidence that Client Services is guilty of "oppression, fraud, or malice".[19]  In any event, the financial information is not discovery unless and until the jury has determined, by clear and convincing evidence, that defendant is subject to punitive damages.

Therefore, because plaintiffs are not entitled to punitive damages under the FDCPA and their State law claims provide no support for such a prayer, Client Services is not required to allow discovery into its net worth and financial condition at this stage of the litigation.[20] As provided under California law, Client Services will make a witness available at the time of trial in the unlikely event punitive damages remain a viable claim after a first phase of a bifurcated trial.

**Former Employee Don Bailey**

As you know, plaintiffs served our office (and presumably Client Services' former employee Don Bailey), with a deposition subpoena on April 5, 2007, for a deposition that was to occur five business days later on April 12, 2007.  To compound the unreasonableness of the notice, the deposition was to occur halfway across the country in St. Charles, Missouri.  The notice of deposition must give "reasonable" notice to the parties.[21]

Furthermore, plaintiffs did not engage in any meaningful meet and confer prior to noticing the deposition.  Plaintiffs' notice and conduct was unreasonable and an abuse of the discovery process.  Because of the inadequate and unreasonableness of the notice, Client Services did not have sufficient time to meet with Mr. Bailey to determine his involvement, knowledge of, or connection with the claims made in the Sanchez complaint.

Moreover, Don Bailey is a former employee and Client Services has since confirmed that Mr. Bailey had absolutely no involvement with any collection efforts on the subject Sanchez account or the Discovery Card account.  Obviously, his testimony is not relevant or admissible.

The notice for the deposition of Mr. Bailey was and is an abuse of the discovery process, and the only reason in noticing his deposition was to burden, oppress and harass Client Services and its employees.  As you know, Rule 26(g) imposes an affirmative duty

---

[19]  California Civil Code section 3294(c).
[20]  California Civil Code section  3295(c).
[21]  FRCP 30(b)(1); see United States v. Philip Morris Inc. (D DC 2004) 312 F.Supp.2d 27, 36–37—3 days not "reasonable" notice ("especially to busy litigators who need to prepare to testify about events occurring six to nine years previously"); In re Sulfuric Acid Antitrust Litig. (ND IL 2005) 231 FRD 320, 327.

Silicon Valley • San Francisco • Los Angeles • Sacramento



**HAYES**
**DAVIS**
**BONINO**
**ELLINGSON**
**McLAY**
**&SCOTT, LLP**

ATTORNEYS AT LAW

on attorneys to utilize discovery in a responsible manner and to avoid discovery abuses. It prevents seemingly proper discovery that is grossly disproportionate to the case, unduly burdensome, or intended to harass the opposing party.[22]  Because Mr. Bailey had no involvement in the Sanchez matter, we see no justification in having his deposition taken in this case.

It is also disturbing that you made personal and direct contact with Mr. Bailey when you are aware that we represent the Client Services' current and former employees who are being subpoenaed by you.[23]  We assume your direct contact with Client Services' current or former employees without first clearing it with our office was inadvertent, an oversight and it will not occur in the future.

**Conclusion**

For all the above-stated reasons, Client Services stands by its objections and it has fully complied with its discovery obligations in regard to producing a qualified Personal Most Knowledgeable/Rule 30(B)(6) witness.  Client Services further stands by its objection to the deposition of Don Bailey and there is no justification for having his deposition taken in this case.

As always should you have any questions or wish to discuss this further, please do not hesitate to call.

Sincerely,

Brian R. Davis

---

[22]  FRCP 26, Adv. Comm. Notes (1983); *see* <u>Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership</u> (9th Cir. 1996) 76 F3d 1003, 1008 [sanctions imposed for claiming document withheld from discovery contained confidential information without disclosing it was on file with a public agency and was matter of public record].

[23]  You also contacted our client Mark Andrews (another Client Services' former employee) and spoke with him without first checking with my office regarding our representation of Mr. Andrews.

Silicon Valley • San Francisco • Los Angeles • Sacramento

# EXHIBIT 17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

IRMA SANCHEZ, JORGE      )
SANCHEZ AND SOPHIA       )
SANCHEZ,                 )
                         )
        Plaintiffs,      )
                         )
v.                       )CIV NO. C06-06280 PVT
                         )
CLIENT SERVICES, INC.,   )
AND KARLA DAVIS,         )
                         )
        Defendants.      )


VIDEOTAPED DEPOSITION OF KARLA DAVIS
April 11, 2007
Taken on behalf of Plaintiffs


Brenda S. Orsborn, RPR/CSR/CCR
Illinois License No. 084-003460
Missouri License No. 914

Page 10

1 legal matter in a courtroom?
2    A.  No, sir.
3    Q.  Outside of a courtroom?
4    A.  No, sir.
5    Q.  Have you ever been married?
6    A.  Yes.
7    Q.  Okay.  Are you widowed?
8    A.  Is that pertinent to this?  I mean --
9       MR. DAVIS:  You -- you can answer with
10 respect to whether you're married or not.  Counsel, I
11 don't think she needs to get into the circumstances of
12 her prior relationship here.
13    Q.  (By Mr. Barry) Well, you're a divorced
14 person?
15    A.  Yes, I am.
16    Q.  Okay.  All right.  So my question was, is
17 there some -- was there some way you managed to get
18 divorced without having a legal proceeding?
19       MR. DAVIS:  Objection.  She's not going to
20 answer questions about her divorce proceedings.
21       MR. BARRY:  Well, I'm asking whether or not
22 she's been involved in legal proceedings, and she said
23 she wasn't.  And so I'm going to --
24       MR. DAVIS:  So she's answered your question.
25       MR. BARRY:  -- come back and clarify.

Page 11

1       MR. DAVIS:  Well, again, I'm going to object
2 on the grounds of my client's privacy rights, that she
3 doesn't have to answer questions about her divorce
4 proceedings or whatever the circumstances were
5 concerning the divorce.  She's answered your
6 questions.
7       MR. BARRY:  Well, your speaking objection is
8 noted.  And I would just note for the record that at
9 the last deposition we had, we had a problem with
10 speaking objections, and we'll move for a Protective
11 Order to prevent you from making suggestive speaking
12 objections, Mr. Davis, if we need to.
13    Q.  (By Mr. Barry) But my question goes to legal
14 proceedings and whether or not you've ever been
15 involved in a legal proceeding.  And I presume that
16 your divorce was some sort of legal proceeding.  Was
17 it here in Missouri?
18    A.  Yes, sir.
19    Q.  Okay.  All right.  So there must have been
20 some kind of court file with respect to your divorce,
21 I assume, here in Missouri?
22    A.  When you said "legal proceedings," I assumed
23 you meant collection agencies.
24    Q.  Right.  And these aren't -- yeah.  And these
25 aren't trick questions.  I'm asking kind of a broad

Page 12

1 brushstroke, and that's why I came back.  I'm quite
2 certain it's your intent to testify truthfully here
3 today, and so I wanted to make sure that if there were
4 any other things that you might not have considered as
5 a legal proceeding, that we caught those, and that's
6 why I asked you about the divorce.  Okay?  It's not my
7 intention to invade your privacy.  I'm not interested
8 in any -- to any extent in your divorce, other than
9 the fact that it was a legal proceeding.
10       In the course of -- so other than your
11 divorce as a legal proceeding, any other legal matters
12 you've been involved in in your adult life?
13    A.  I have some issues with my children that's
14 been legal, but it's not pertinent to this case.
15    Q.  Okay.  Well, you're here as a party to this
16 case --
17    A.  Correct.
18    Q.  -- and so you're compelled to testify.  And
19 so if you choose not to testify, I can get a Court
20 Order to come back and compel you to testify.  So --
21 and I don't want you to decide here and now what you
22 think is pertinent.  I just want you to answer my
23 questions.  If your counsel has some advice for you,
24 your counsel will give you that advice.  But my
25 question relates to whether or not you've had any

Page 13

1 other legal proceedings.  And I'm not just talking
2 about just related to collections or your occupation,
3 but any legal proceedings, whatsoever.
4       MR. DAVIS:  I'm going to object on the
5 grounds that it would violate my client's privacy
6 rights and, obviously, would not be relevant or
7 admissible in this case to ask her about divorce
8 proceedings or any other legal proceedings that may or
9 may not relate to her children.  Why don't you ask --
10       MR. BARRY:  Well, I'll ask the questions I
11 want to ask, and your objection's noted.
12    Q.  (By Mr. Barry) And my question is, have you
13 ever been involved in any other legal proceedings,
14 other than your divorce, here in the State of Missouri
15 or anywhere else?
16       MR. DAVIS:  Well, we're going to go ahead
17 and take a break then, and then I'll consult with my
18 client off the record, since -- if you're going to
19 continue to get into her personal matters, I'll see if
20 some of it she can answer without violating her
21 privacy rights, and then we'll come back on the
22 record.
23       MR. BARRY:  I'm well aware of the
24 evidentiary basis for privacy rights without having to
25 move for a Protective Order, Counsel.  So I'm just --

4 (Pages 10 to 13)

Page 14

1   I mean, you understand these are just basic questions
2   about whether or not she's been involved in legal
3   proceedings, other than the legal proceedings she is
4   involved in right now.
5           MR. DAVIS:  Actually, that's not my
6   interpretation of the question.  My interpretation of
7   these questions are that you are asking her to answer
8   questions regarding her divorce proceedings and
9   whether she's had any legal proceedings related to her
10  children.  I'm objecting on the grounds that that
11  would violate her rights of privacy, and it would
12  concern matters that are clearly, on their face, not
13  relevant or admissible in this action.  That said, I
14  will consult with my client off the record to see if
15  there's any portion of that question that she can
16  answer without getting into her privacy or her private
17  matters.
18          MR. BARRY:  And I appreciate the fact that
19  you can make that argument to a federal judge with the
20  expectation that you move for a Protective Order if
21  you want to prevent her from testifying truthfully
22  about legal matters, such as whether or not she's ever
23  given sworn testimony in any other case.  That's
24  completely admissible and completely relevant in this
25  case.  So I've got a right to know that.

Page 15

1           I'm not interested in her child custody
2   issues or her divorce issues.  I'm interested in
3   finding out what other legal matters she's been
4   involved in.  I've stated that on the record.  And
5   you're now going to go and instruct your client,
6   apparently, on how or whether or not to answer those
7   questions.  And, you know, those are -- these are
8   baseline questions about whether or not she's been
9   involved in other legal proceedings.
10          She stated that she apparently had issues
11  with her children.  I didn't ask her about her
12  children.  I'm not interested in her children.  I'm
13  interested in whether or not she's ever been involved
14  in other legal proceedings where she's given sworn
15  testimony.
16          MR. DAVIS:  Okay.  Just so we're clear, I've
17  heard your argument, and I am asserting an objection
18  on behalf of my client, that she -- her privacy rights
19  are not going to be violated regarding family law
20  matters involving her divorce or her children or
21  anything like that.  That said, again, if -- I'm going
22  to consult with my client and see that if she can
23  answer some of these questions with respect to a legal
24  proceeding and prior testimony without getting into
25  her private matters.

Page 16

1           If you're -- if you're suggesting that to do
2   that, we need to suspend the deposition and move for a
3   Protective Order, if that's what you want to do, we
4   can do that.  Obviously, I did not anticipate today
5   that you would ask her questions about her divorce
6   proceedings or any legal proceedings regarding her
7   children.  You have.  I'm going to see if we can get
8   you an answer on the record, and that will require me
9   to consult with my client off the record.
10          If you instead think that the better way to
11  proceed is to suspend the deposition and go to court
12  and get a Protective Order that would more clearly
13  define what you're entitled to and what you're not
14  entitled to, I'll do that, too.  It's up to you.
15          MR. BARRY:  We're staying on the record.
16          (Whereupon Mr. Davis and the witness left
17  the deposition room.)
18      Q.  (By Mr. Barry) So you're still under oath,
19  and my question to you is, you mentioned that you
20  had -- well, I don't want to misstate your testimony.
21  You mentioned you had some issues with your -- I
22  believe you said "children;" is that correct?
23      A.  Yes, sir.
24      Q.  Have those issues been in the past five
25  years?

Page 17

1       A.  No, sir.
2       Q.  Okay.  All right.  And your -- is your
3   divorce more than five years ago?
4       A.  Yes, sir.
5       Q.  Okay.  In the last five years, have you been
6   involved in any other legal proceedings, other than
7   this one and the other two we've talked about, the
8   other issues we've talked about?
9       A.  No, sir.
10      Q.  And so when I say "been involved in," I want
11  to be clear about it.  Have you given sworn testimony
12  or unsworn testimony in any case in the past five
13  years?
14      A.  No, sir.
15      Q.  Have you ever had a complaint made about
16  your collection conduct by anyone; by a consumer,
17  Attorney General, Better Business Bureau?
18      A.  No, sir.
19      Q.  And I think you testified you worked for
20  Client Services -- I'm sorry, I don't have the dates.
21  Could you give me the dates again?
22      A.  May of '05 to July of '06.
23      Q.  Where do you currently work?
24      A.  Long John Silvers.
25      Q.  What do you do there?

5 (Pages 14 to 17)

Page 18

1    A.  I do multiple tasks.  I'm a cashier.  I
2  dish.  I cook.  I do the drive-through.
3    Q.  And how long have you been there?
4    A.  Approximately two months.
5    Q.  And between July of --
6    A.  Oh, three months.  February.
7    Q.  Okay.  Between July 2006 and February of
8  2007, where were you working?
9    A.  Yes.
10    Q.  Where were you working?
11    A.  I worked at High Vee as a cook.
12    Q.  And High Vee, is that a grocery store?
13    A.  It's a grocery store, yes, sir.
14    Q.  And anywhere else during that time?
15    A.  No, sir.
16    Q.  And is that -- I'm sorry.  You're currently
17  living in what city?
18    A.  St. Joseph, Missouri.
19    Q.  St. Joseph.  And that's about 400 miles from
20  here?
21    A.  Correct.
22    Q.  What was the name the collection agency you
23  said you worked at before working at Client Services?
24    A.  Systems and Services Technologies.
25    Q.  And how long did you work there?

Page 19

1    A.  May of 2001 till January of '05.
2    Q.  And why did you leave there?
3    A.  I moved to St. Louis.
4    Q.  And where was Systems and Services
5  Technologies located?
6    A.  St. Joseph, Missouri.
7    Q.  And was there a reason that you moved here?
8    A.  To be with my mom.  She was sick at the
9  time.
10    Q.  Did you receive any performance reviews when
11  you worked for Client Services?
12    A.  None that I'm aware of.
13    Q.  Did they ever rate your performance verbally
14  or in a file somewhere or on a computer system
15  somewhere in terms of your collection performance,
16  that you know of?
17    A.  Yes.
18    Q.  Okay.  Where would that be located?
19    MR. DAVIS:  Objection.  Lacks foundation.
20  Calls for speculation.  It may violate her rights of
21  privacy as an employee.
22    Q.  (By Mr. Barry) Do you know where that
23  information would be located, that performance
24  information?
25    A.  No, sir.

Page 20

1    Q.  And can you describe that performance
2  information for me?
3    MR. DAVIS:  Object on the grounds it would
4  violate my client's right of privacy.  I will allow
5  her to answer to the extent it involved, if at all,
6  any work on the Sanchez matter.  So if you know
7  whether your performance review involved anything with
8  respect to the Sanchez matter, you can answer that
9  question.
10    A.  No.
11    Q.  (By Mr. Barry) Okay.  Your counsel's -- your
12  counsel has reshaped and reformed my question and --
13  and I would argue materially changed it.  And so I'm
14  going to ask you the question again, and then your
15  counsel is going to make his objection again, and then
16  you can decide whether or not you're going to follow
17  his advice and whether or not you're going to answer
18  my question.  Okay?
19    Q.  (By Mr. Barry) Madam Court Reporter, would
20  you read the question back?
21    (Whereupon the reporter read the question.)
22    MR. DAVIS:  Okay.  I'm going to object on
23  the grounds that the question calls for the witness to
24  testify regarding a personnel matter.  Her privacy
25  rights would be violated.  However, I am carving out

Page 21

1  an exception in that if any of the information in her
2  personnel file or her performance review concerns the
3  Sanchez matter, I will allow the witness to answer
4  that -- that question to that extent.
5    Q.  (By Mr. Barry) Are you going to follow your
6  counsel's advice and not answer my question?
7    A.  Yes, sir.
8    MR. BARRY:  Counsel, I take it that you're
9  going to move for a Protective Order?
10    MR. DAVIS:  Would you like us to suspend the
11  deposition and do it now, or would you like to --
12    MR. BARRY:  Well, listen.  We're here and
13  your -- your persistent suggestion that we suspend the
14  deposition is unproductive and -- and improper.  So
15  what I'm asking you is if you're going to move for a
16  Protective Order.  I presume that you are, since
17  you've instructed her not to answer --
18    MR. DAVIS:  Well, Counsel, then --
19    MR. BARRY:  -- the question.
20    MR. DAVIS:  -- you misunderstood me, because
21  I am certainly not suggesting, inviting or
22  recommending the deposition be suspended to move for a
23  Protective Order.  Instead, what I'm doing is I'm
24  simply asserting objections on a question-by-question
25  basis, and then, obviously, we can meet and confer now

6 (Pages 18 to 21)

Page 22

1  or we can meet and confer later, whatever you like.
2       MR. BARRY:  Well, I mean, here's the thing.
3  We're back here, and you're instructing your client
4  not to answer my questions.  You've made your
5  objections.  You've lodged them and then instructed
6  her not to answer.  And my follow-up question to you
7  is simply, I presume you're moving for a Protective
8  Order when you get back home to San Jose -- or rather
9  to Brentwood Shores -- when you get back, I presume
10  you're going to file for a Protective Order to
11  prohibit me for getting the answers to my questions --
12       MR. DAVIS:  Well, two things.  One --
13       MR. BARRY:  -- or at least the judge to
14  decide that -- because at this point, what's happening
15  is that you're making -- you're lodging your
16  objections and unilaterally restricting my right.  I
17  think you, if you want a Protective Order, you should
18  have moved for one.  But now that we're here and you
19  haven't moved for one, I encourage you to get on the
20  phone with the Court and move for a Protective Order,
21  because, apparently, there's a tremendous amount of
22  baseline questions I'm asking that you feel invade
23  your client's privacy.  And while I -- I vehemently
24  disagree with that, I think that if you want to
25  protect her rights, go right ahead.  But, you know,

Page 23

1  the constant -- the constant obstructions with
2  objections and telling her not to answer my questions
3  is getting us nowhere.
4       MR. DAVIS:  Okay.  Three things.  First, I'm
5  not here to answer questions, obviously, since I'm not
6  being deposed.
7       Second, I'm not here to advise you or reach
8  an agreement with you regarding what we may or may not
9  do procedurally subsequent to the deposition.
10       And, third, there have not been persistent
11  instructions to this witness, or any other witness,
12  not to answer a question.  And, in fact, in all prior
13  depositions in this case involving Client Services,
14  Incorporated employees, we have been consistent in
15  that to the extent you ask the witness to answer
16  questions about their personnel file or their
17  performance reviews, if it did not involve the Sanchez
18  matter, then, of course, we have an obligation, and I
19  think an objection is adequate to protect their
20  privacy rights.
21       On the other hand, with each of the
22  depositions -- the last time we were here a month
23  ago -- and so far this morning, at least on one
24  occasion, we've made clear that if the witness'
25  personnel file or performance reviews in any way

Page 24

1  relates to the Sanchez matter, we will allow the
2  witness to answer that question.  So I think she and
3  all the other witnesses have been answering that
4  question.
5       MR. BARRY:  Well, the problem I have, I
6  guess, with all due respect to you, Counsel, is that
7  you're not the gatekeeper of the information, and the
8  Court is, and I will respect the Court's decision, and
9  I will defer to the Court to advise both of us with
10  respect to what's permissible or not permissible in
11  terms of my inquiry at this deposition.
12       What's untenable is your unilateral
13  determinations, evidentiary determinations, about
14  what's permissible and impermissible, and what you're
15  going to permit your client to answer and not answer.
16  I can understand allowing her to answer those
17  questions and then moving for a Protective Order as to
18  that information.  I guess you feel it's improper, but
19  I'm asking about whether or not this person's ever
20  obtained -- ever had a performance review at her job,
21  and you're instructing her not to answer my question
22  unless it relates to my client.  And that isn't my
23  question.
24       And so I think you need to make it clear on
25  the record that you are not only objecting, you are

Page 25

1  reshaping my inquiries and then instructing your
2  client not to answer my inquiries.  And so to the
3  extent that you're doing that, I think that it's clear
4  on the record that you're reshaping my questions, and
5  I'm not going to tolerate it.  I'm not going to permit
6  you to reshape the questions.
7       I'm going to ask my questions.  If you want
8  to instruct her not to answer on the basis of some
9  evidentiary privilege or some other evidentiary basis,
10  I'm happy to -- I'm happy to hear it on the record,
11  but I'm not going to -- I'm not here to have my
12  questions reshaped.  It -- it's -- it doesn't do
13  either of us any good.  I've got a question.  I either
14  want that question answered, or I want to know that
15  you're not going to answer it, in which case you could
16  either move for a Protective Order or move to compel
17  the answer.
18       MR. DAVIS:  Okay.  Unfortunately --
19       MR. BARRY:  Can we at least agree on that?
20       MR. DAVIS:  Let me know when you're done,
21  and I'll tell you what I think.  I can't -- every time
22  I try to start a sentence, you interrupt me.  So I'm
23  waiting till you're done.  So when you're done, I'll
24  talk.  Does that mean you're done?
25       Okay.  A couple of things.  First, the

7 (Pages 22 to 25)

Page 26

1   witness has answered the question regarding her
2   understanding or knowledge that she had performance
3   reviews. So she has answered that question, and I'm
4   certainly not asking her to -- or not instructing her
5   to not answer that question.
6        Second, the -- the grounds for objecting and
7   instructing a client not to answer are if it would
8   violate a privilege. In this case, we've only
9   asserted an objection and an instruction not to
10  answer, where, in our view, there has been an -- a
11  question would violate the privilege. Attorney/client
12  privilege would be one. And the second is it would
13  violate her Constitutional and statutory rights of
14  privacy regarding her personnel matters. However, we
15  have made clear, and carved out an exception, that if
16  it in any way related to the Sanchez matter, she
17  certainly can answer that question.
18       I guess we have a different understanding of
19  the -- of how the deposition process and evidentiary
20  objections work. My understanding, and it's been my
21  understanding and practice for years is that if you're
22  asking a witness to answer a question that would
23  violate a privileged -- a privilege she has, one,
24  attorney/client privilege, or, two, a Constitutional
25  right of privacy privilege, then we're within our

Page 27

1   rights and, frankly, our obligation to protect her in
2   that regard. But, again, even in light of that
3   constitutional right of privacy in her personnel and
4   employment matters, we have, again, carved out a clear
5   exception, that if there's anything regarding the
6   Sanchez matter, she certainly can answer that
7   question.
8        But just so we're clear, because I think you
9   made an important misstatement a moment ago, she has
10  been allowed and has answered the questions this
11  morning concerning her understanding of whether she
12  had a personnel file and whether she had performance
13  reviews. It's only when you asked for the content of
14  her personnel file and her performance reviews that we
15  asserted an objection.
16  Q.   (By Mr. Barry) What documents did you
17  review, Ms. Davis, before you came here for your
18  deposition, in preparation for your deposition?
19  A.   The paperwork before me.
20  Q.   When you say the paperwork before you, are
21  you referring to Exhibit 1? Are you referring to
22  Exhibit 1?
23  A.   Yes, sir.
24  Q.   Okay. That document is Exhibit 1. Other
25  than Exhibit 1, what else did you refer to?

Page 28

1   A.   That's it.
2   Q.   All right. And was that provided to you by
3   your counsel?
4   A.   Yes, sir.
5   Q.   Tell me what you -- tell me what you
6   remember about the Sanchez account.
7   A.   I don't remember the Sanchez account.
8   Q.   Do you remember my client, Irma Sanchez?
9   A.   No, sir.
10  Q.   Okay. Do you speak Spanish?
11  A.   No, sir.
12  Q.   Now, this isn't an impertinent question. I
13  just want to make absolutely sure. You didn't speak
14  Spanish two years ago?
15  A.   No, sir.
16  Q.   Do you remember speaking with -- do you
17  remember speaking with anyone related to the Sanchez
18  account?
19  A.   No, sir.
20  Q.   Do you remember anything about the Sanchez
21  account?
22  A.   No, sir.
23  Q.   And I presume that all of the information
24  you have in your recollection right now about the
25  Sanchez account has come from Exhibit 1; is that

Page 29

1   correct?
2   A.   Yes, sir.
3   Q.   Have you ever been -- have you ever been
4   convicted of a crime?
5   A.   Yes, sir.
6   Q.   What crime?
7        MR. DAVIS: Hold on. We're going to take a
8   break. I want to consult with the client off the
9   record, and then I'll -- I'll probably be able to let
10  her answer the question, but I want to consult with
11  her off the record first.
12       MR. BARRY: Just note my objection to the
13  coaching of the witness in the midst of the
14  deposition.
15       (Whereupon Mr. Davis and the witness left
16  the deposition room.)
17       MR. DAVIS: We can go back on the record,
18  and the witness can answer the question.
19  A.   Yes, sir.
20       MR. BARRY: Madam Court Reporter, would you
21  read the question back, please?
22       (Whereupon the reporter read the question.)
23  A.   A DUI.
24  Q.   (By Mr. Barry) And when was that?
25  A.   2001 -- no, 2000. October of 2000.

8 (Pages 26 to 29)

# EXHIBIT 18

AO88 (Rev. 1/94) Subpoena in a Civil Case

# United States District Court
## EASTERN DISTRICT OF MISSOURI

In re

Irma Sanchez, Jorge Sanchez, and
Sophia Sanchez,

**SUBPOENA IN A CIVIL CASE**

Plaintiffs,

Case No.    MISC.
C06-06280 PVT
N.D. California

V.

Client Services, Inc. and Karla Davis,

Defendants.

To:    **Donald Bailey**
4829 Cherry Blossom Ln Apt 482
Hazelwood, Missouri 63042-1502
(314) 291-6502

☐    **YOU ARE COMMANDED** to appear in the United States court at the place, date and time specified
below to testify in the above adversary proceeding.

| PLACE | COURTROOM |
|---|---|
|  | DATE AND TIME |

✔    **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the
taking of a deposition in the above adversary proceeding.
**SEE THE ATTACHED NOTICE OF DEPOSITION OF DONALD BAILEY**

| PLACE | DATE AND TIME |
|---|---|
| Embassy Suites Hotel<br>Two Convention Center Plaza (Room TBA)<br>St. Charles, MO 63303 | April 12, 2007 1:00 p.m. CST |

☐    **YOU ARE COMMANDED** to produce and permit inspection and copying of the following
documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐    **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time
specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any subpoenaed organization not a party to this adversary proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| _Ronald Wilcox_ Attorney for Plaintiffs | April 3, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Ronald Wilcox, 2160 The Alameda, Suite F, 1st Floor, San Jose, CA 95126    (408) 296-0400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

A088 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |
| SERVED BY (PRINT NAME) | TITLE |
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                        SIGNATURE OF SERVER

                                       _____
                                       ADDRESS OF SERVER

                                       _____

Rule 45. Federal Rules of Civil Procedure, Parts C & D:

## (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service , serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party form significant expense resulting form the inspection and copying commanded.

ii

c (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

c

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

~~(B) If a subpoena~~

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the experts's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more that 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

1  <u>**CERTIFICATE OF SERVICE**</u>

2  I, Marion Ramel, hereby certify that on April 5, 2007 the foregoing document,

3  ***Subpoena in a Civil Case to Donald Bailey***, was sent by first class U.S. Mail and facsimile to:

4  ~~Brian R. Davis~~

5  Phuong H. Nguyen
   Stephen Scott

6  Hayes, Davis, Bonino, Ellingson, McLay & Scott
   203 Redwood Shores Parkway, Suite 480

7  Redwood Shores, CA 94065
   Fax: (650) 637-8071

8
   ATTORNEYS FOR DEFENDANTS

9
   Executed on April 5, 2007 in San Jose, California.

10

11

12  _Marion Ramel_
    Marion Ramel

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1  Ronald Wilcox, Esq., State Bar No. 176601
2  2160 The Alameda, Suite F, First Floor
   San Jose, CA 95126
3  Tel: (408) 296-0400
   Fax: (408) 296-0486
4

5  ATTORNEY FOR PLAINTIFFS

6              UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
7                 SAN JOSE DIVISION

8  IRMA SANCHEZ, JORGE SANCHEZ,      )
   AND SOPHIA SANCHEZ,               )    CIV. NO.  C06-06280 PVT
9                                    )
                                     )
10           Plaintiffs,             )
                                     )
11       v.                          )
                                     )
12  CLIENT SERVICES, INC. AND KARLA  )
    DAVIS,                           )
13                                   )
             Defendants.             )
14                                   )

15          NOTICE OF DEPOSITION OF DONALD BAILEY

16

17  To:  Phuong H. Nguyen
         Stephen A. Scott
18       Brian R. Davis
         Hayes, Davis, Bonino, Ellingson, McLay & Scott
19       203 Redwood Shores Parkway, Suite 480
         Redwood Shores, CA 94065
20       Fax: (650) 637-8071

21      **PLEASE TAKE NOTICE THAT we shall take the deposition of Donald Bailey on**

22  **April 12, 2007 at 1:00 p.m. C.S.T.**  The deposition shall proceed at **the Embassy Suites Hotel,**

23  **Two Convention Center Plaza, (Room TBA), St. Charles, MO 63303.**  The deposition may be

24  taken by telephone and/or recorded by audio and/or video.

25

1    The deposition shall be taken pursuant to notice and shall continue from that time until

2   complete.

3    A list of all parties or attorneys for parties on whom this Notice of Deposition is being

4   served is shown on the accompanying Certificate of Service.

5

6   Date: ___4/3/07___

7                                    _____
                                     Ronald Wilcox
8                                    Attorney at Law
                                     2160 The Alameda, Suite
9                                    San Jose, CA 95126
                                     Tel: 408-296-0400
10                                   Fax: 408-296-0486

11                                   ATTORNEY FOR PLAINTIFFS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
## CERTIFICATE OF SERVICE

2   I, Marion Ramel, hereby certify that on April 5 , 2007 the foregoing document was sent

3   by facsimile and first class U.S. Mail to:

4                           Phuong H. Nguyen
5                           Stephen A. Scott
                            Brian R. Davis
6                           Hayes, Davis, Bonino, Ellingson, McLay & Scott
                            203 Redwood Shores Parkway, Suite 480
7                           Redwood Shores, CA 94065
                            Fax: (650) 637-8071
8
                            ATTORNEYS FOR DEFENDANTS
9
        Executed on April 5 , 2007, in San Jose, California.
10

11
                                                    _Marion Ramel_
12                                                  Marion Ramel

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 19

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

IRMA SANCHEZ, JORGE          )
SANCHEZ AND SOPHIA           )
SANCHEZ,                     )
                             )
          Plaintiffs,        )
                             )
v.                           )CIV NO. C06-06280 PVT
                             )
CLIENT SERVICES, INC.,       )
AND KARLA DAVIS,             )
                             )
          Defendants.        )

RECORD OF NON-APPEARANCE
April 12, 2007
Taken on behalf of Plaintiffs

Brenda S. Orsborn, RPR/CSR
Illinois License No. 084-003460
Missouri License No. 914

Page 2

```
 1          UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
 2              SAN JOSE DIVISION
 3
 4   IRMA SANCHEZ, JORGE  )
     SANCHEZ AND SOPHIA   )
 5   SANCHEZ,             )
                          )
 6      Plaintiffs,       )
                          )
 7   v.                   )CIV NO. C06-06280 PVT
                          )
 8   CLIENT SERVICES, INC.,)
     AND KARLA DAVIS,     )
 9                        )
        Defendants.   )
10
11       RECORD OF NON-APPEARANCE, on behalf of the
     Plaintiffs, April 12, 2007, between the hours of nine
12   o'clock in the morning and six o'clock in the evening
     on that day at the Embassy Suites Hotel, Two
13   Convention Center Plaza, St. Charles, Missouri 63303,
     before BRENDA S. ORSBORN, a Certified Shorthand
14   Reporter and Registered Professional Reporter.
15
         A P P E A R A N C E S
16
         The Plaintiffs were represented by Mr. Peter
17   F. Barry of The Barry Law Office, Ltd., 342 County
     Road D East, St. Paul, Minnesota 55117 and Mr. Ronald
18   Wilcox, 2160 The Alameda, First Floor, Suite F, San
     Jose, California 95126.
19
20       The Defendants were represented by Mr. Brian
     R. Davis of the law firm of Hayes, Davis, Bonino,
21   Ellingson, McLay & Scott, 203 Redwood Shores Parkway,
     Suite 480, Redwood Shores, California 94065 and Ms.
22   Kerry Aileen Simpson, General Counsel, Client
     Services, Inc., 3420 Harry S. Truman Boulevard, St.
23   Charles, Missouri 63301.
24
25
```

Page 3

```
 1        S T I P U L A T I O N
 2      IT IS STIPULATED AND AGREED by and between
 3   counsel for the Plaintiff and counsel for the
 4   Defendants that this Record of Non-Appearance may be
 5   taken by Brenda S. Orsborn, Registered Professional
 6   Reporter and Certified Shorthand Reporter, and
 7   afterwards transcribed into print.
 8               * * * * *
 9      MR. BARRY:  So we're back on the record, and
10   we are here at the duly-noticed deposition with a
11   subpoena for Don Bailey.  And apparently Mr. Bailey is
12   not going to appear.  Is that correct, Mr. Davis?
13      MR. DAVIS:  Yeah.  He is -- as I just
14   indicated off the record a moment ago, he is unable to
15   go forward today.  Here are the circumstances:  First
16   of all, he was able to take a short break from his
17   current job and employment to come down here and meet
18   me for the first time.  What has happened is he was
19   served with a subpoena by a sheriff at his home late
20   last week, and as you know, we didn't have notice of
21   that until after it occurred, and he was unable to
22   find me or anybody regarding this litigation until
23   today.  I did not have any correct, current phone
24   number, although we left messages for him, and he was
25   unable to get in contact with me, not surprisingly,
```

Page 4

```
 1   since I'm located in California.
 2      He has no knowledge of this litigation, and,
 3   in fact, has confirmed, and I can confirm on the
 4   record that he had no involvement in the Sanchez
 5   account, has no knowledge of the Sanchez account or
 6   litigation, has never worked on a Discover Card
 7   account, has no knowledge of any collection work with
 8   respect to Discover Card, and in the end, has had no
 9   time to make arrangements at his work to be available
10   for a deposition, has had no time to meet with his
11   attorney to prepare for this deposition, and for those
12   reasons, he cannot go forward today.
13      I would add to that that because this
14   witness, who we had no advance knowledge of being
15   subpoenaed in this case, has no knowledge or
16   involvement in the Sanchez account, which is the
17   subject of this litigation, he does not possess any
18   information that is discoverable or admissible in this
19   litigation, and consequently, is not even a proper
20   party or witness to be deposed.
21      That said, I will, later this week or next
22   week, when we return, have an opportunity, hopefully,
23   to get more information from him and will engage in
24   and meet and confer with plaintiffs' counsel related
25   to this deposition, to see if it's necessary at all.
```

Page 5

```
 1   But there's no way that Mr. Bailey is prepared to
 2   proceed today.  He's now back at work or on his way
 3   back to work and cannot go forward with the deposition
 4   until he has a reasonable opportunity to meet with his
 5   counsel, to prepare.
 6      MR. BARRY:  And, in fact, Mr. Davis, who is
 7   his counsel?
 8      MR. DAVIS:  I am his counsel.
 9      MR. BARRY:  Okay.  Now, my understanding,
10   from your comments yesterday, were that you had
11   already been in communication with him and that you
12   were his counsel.  Now today, you've just indicated
13   that this is the first opportunity you've ever had to
14   speak with him.
15      MR. DAVIS:  Yes, because what -- just to
16   clarify, and apparently you misunderstood me
17   yesterday.  What we had done, as soon as we learned of
18   the subpoena -- and I didn't learn of it until
19   Saturday -- I sent an e-mail to Ron, as a matter of
20   fact -- we have left messages for Mr. Bailey, and it
21   sounds like we did not have the correct phone numbers
22   for him, which is why I was not able to get a
23   telephone call back from him.  So I have not had an
24   opportunity to talk to him, although I had attempted
25   to contact, and we had left messages for him.
```

Page 6

1    MR. BARRY: Well, given the fact he's a
2 former employee, I can't -- I can't get my mind around
3 the notion that you represented him without having
4 talked to him initially to be represented by him.
5    MR. DAVIS: We -- we represent all current
6 and former employees of Client Services, Incorporated,
7 in connection with this litigation. For example,
8 Karla Davis is a former employee of Client Services,
9 Incorporated, and frankly, it doesn't make any
10 difference for purposes of us defending Client
11 Services and their employees, current and former, in
12 this matter. And Mr. Bailey, now that he was able to
13 finally have a direct communication with me,
14 confirmed, and I can confirm for you on the record,
15 that I represent him, and I will be defending him in
16 this deposition in the event he appears for a
17 deposition.
18    MR. BARRY: Well, I sought to communicate
19 with Mr. Bailey yesterday, prior to your
20 representation of him. You told me that you
21 represented him. Now, on that basis, I couldn't have
22 communication with him. Now you're telling me today
23 on the record that you represented him, that you had
24 your first communication with him in this hotel lobby
25 today and spent the time that we noted for his

Page 7

1 deposition apparently conversing with him and getting
2 yourself retained as his attorney, and used up any
3 available time we would have had to depose him in this
4 matter, and we could have dispensed with his
5 deposition, likely dispensed with the deposition in
6 the first 50 minutes that he was here. And so the
7 problem I have is that you indicated -- you indicated
8 to me yesterday that you represented him, and now
9 you're indicating that it was just today that you were
10 retained by him.
11    MR. DAVIS: No, that's not what I'm saying.
12 I wasn't just retained by him today. Again, because
13 apparently this isn't clear to you, we represent
14 Client Service -- Client Services, Incorporated and
15 their current and former employees with respect to
16 this litigation. The moment that you served a
17 subpoena on one of our employees or former employees,
18 then he came within our representation. The fact that
19 you handled it in a way that neither he nor I were
20 provided enough advanced notice is what prevented our
21 ability to have a substantive conversation before the
22 deposition.
23    MR. BARRY: How can you represent a person
24 without their knowledge or consent, Mr. Davis? I'm
25 unaware of how that's possible.

Page 8

1    MR. DAVIS: Well, I'm sorry you don't
2 understand how representation works, but there's no
3 point in me stating it again, other than to again
4 remind you that we represent Client Services,
5 Incorporated and all of their current and former
6 employees in connection with this litigation.
7    MR. BARRY: Well, I understand that you've
8 asserted that, and I understand that you want to
9 assert that, and I understand that it's in your
10 client's interest, Client Services, and the named
11 parties to have that. But my question is, how -- how
12 is it possible for you to unilaterally state that you
13 represent the entire universe of employees without
14 their consent or without even their knowledge?
15    MR. DAVIS: I obviously don't need to get
16 into that, because, one, it's not my job to educate
17 you on how representation works; and second, anything
18 with respect to the communications with my clients is
19 obviously privileged, so I'm not going to get into
20 that. I'll just add to the record, as well, if it
21 wasn't already obvious, that we are again objecting to
22 unreasonable and ineffective notice for this
23 deposition, which is, frankly, what caused all of
24 these problems, and then the other being that there
25 was no meet and confer effort with respect to

Page 9

1 scheduling and also the identity of the witness, when
2 you consider that Mr. Bailey had no involvement in the
3 Sanchez account or, for that matter, the Discover Card
4 Services account. Consequently, he possesses no
5 discoverable information or admissible information in
6 this litigation.
7    MR. BARRY: And I understand you have
8 objections, but, you know, I'd also note that you've
9 had better than a week to file a motion to quash or a
10 motion for protective order both with respect to
11 Mr. Andrews, who was produced here yesterday, and with
12 respect to Mr. Bailey, who was not produced here
13 today, and so the California
14 local rules, as I understand them, in the United
15 States District Court for the Northern District of
16 California, allows us to serve a subpoena on a third
17 party and then attempt to meet and confer. That
18 didn't happen in this case, and you didn't move to
19 quash the subpoena or for a protective order.
20    Moreover, I object to the -- I'm not -- I'm
21 trying not to use incendiary language with you, Mr.
22 Davis, because I do respect you, but I object to the
23 tactic of telling us that you represent Mr. Bailey,
24 when, in fact, you don't represent him. You didn't
25 represent him as of yesterday. He didn't know who you

3 (Pages 6 to 9)

Page 10

1  were as of yesterday, and you just apparently
2  contacted him for the first time.  He learned of you
3  today, and I have a problem with that.
4      I'd like for you to clarify what your
5  definition of "former employees" is, because what it
6  appears as though you are seeking to -- you are
7  seeking to prevent us, as counsel, from investigating
8  this case by taking -- by taking -- unilaterally
9  stating that you represent an entire universe of
10  people with or without their consent here in Missouri.
11  I don't -- I'm not privy to whether or not you're
12  licensed here in Missouri.  I don't think that you
13  are, but if you are, you can correct the record now.
14  But I don't understand how you can prevent, by just
15  unilaterally stating you represent every single,
16  solitary, former employee of Client Services, with or
17  without their consent, with respect to this
18  litigation.  I don't know how they consented to that.
19  I don't know if you publish a notice for that or how
20  that happens.
21      And I know you said you don't seek to
22  educate me on representation, and I trust that you
23  don't, because I don't believe that you, yourself,
24  have a clear understanding of when you can and cannot
25  represent a particular party.

Page 11

1      Mr. Bailey appeared today, ready to go
2  forward in this deposition at this hotel, and
3  apparently you took him out in the hallway and talked
4  with him and didn't attempt to meet and confer with us
5  at that time.  You did send an e-mail to us previously
6  with respect to meet and confer, and we returned your
7  phone call, or Mr. Wilcox returned your phone call,
8  though we did not get a return call back from you.
9      My question is, to you, do you have a
10  retainer agreement with Mr. Bailey that's been signed,
11  and how are your fees being paid, if any?  Are you a
12  pro bono attorney with respect to Mr. Bailey?  And how
13  is it that you were able to contract your services
14  with him in the hallway of this hotel?
15      MR. DAVIS:  The only thing I'll add is just
16  to clarify one of your many misstatements, is that
17  Mr. Bailey, as a result of the way you handled this,
18  was not prepared to go forward with his deposition
19  today, and I'll just leave it at that.
20      MR. WILCOX:  Just to clarify, so there's
21  no --
22      MR. DAVIS:  Let me add one other thing, too.
23  You did acknowledge getting my e-mail.  Apparently
24  you're talking about the e-mail I sent to you on
25  Saturday regarding our position that this was handled

Page 12

1  completely improperly and didn't comply with the code
2  and provided insufficient notice to both us and
3  Mr. Bailey.  You indicated, though, that you called
4  me.  I was in the office all day Saturday.  I didn't
5  get a call from either one of you on Saturday.  I was
6  in the office, as I recall, most of the day Monday,
7  but maybe not all of the day, so --
8      MR. BARRY:  I believe I misspoke.
9      MR. DAVIS:  I don't recall getting a call
10  from you that day, and if you called on Tuesday, I
11  wouldn't have gotten it, because I was traveling to
12  St. Louis on Tuesday.
13      MR. BARRY:  Yeah, and I'll let Mr. Wilcox
14  clarify that on the record.  I apologize if I misspoke
15  with respect to a call back.  My understanding is that
16  we haven't had a return call from you in a month
17  related to matters in this case, and it -- you may
18  have a busy schedule.  I know you said -- you
19  indicated in your e-mail last week that you were in
20  trial in Oakland.  But again, I guess I persist in my
21  question to you, which is how is it possible for you
22  to have told me yesterday on the record that you
23  represented Don Bailey, and yet you come back on the
24  record today and tell me you don't represent him, and
25  he's -- or you now represent him and that he met you

Page 13

1  and had communication with you for the first time in
2  the hallway of this hotel?
3      And the tactic of preventing us from talking
4  to any former employees is untenable.  It's not --
5  there's no basis for it, and you're not permitted to
6  just unilaterally state that you represent an entire
7  universe of former employees with or without their
8  consent.
9      MR. DAVIS:  We have been retained by Client
10  Services, Incorporated in defense of the Sanchez
11  litigation.  We have been retained by Client Services,
12  Incorporated to represent the company and any current
13  employees and any former employees they have that are
14  called as witnesses in this litigation.  That has been
15  the agreement from the start, and it will continue.
16      Obviously, no one anticipated that you would
17  subpoena a witness last Thursday without advanced
18  notice of us -- to us, a witness who had no
19  involvement in the Sanchez account and has never had
20  any involvement in the Sanchez litigation.  So
21  obviously, by definition, the way you handled that,
22  there was no way for Client Services, Incorporated or
23  my office to anticipate that you would call a witness
24  from another piece of litigation and pull him in or
25  attempt to pull him into this litigation.  So

4 (Pages 10 to 13)

Page 14

1 obviously, we didn't have an opportunity to talk to
2 him in advance of you serving the subpoena.
3         Once you served the subpoena, the way you
4 did it, prevented him or from us of having a
5 conversation, although as soon as I learned of the
6 subpoena, as soon as Clients Services, Incorporated
7 learned of the subpoena, there were attempts to
8 contact him, and he had attempts to contact us.
9 Unfortunately we were not able to have a substantive
10 conversation until today.
11         MR. BARRY: So when you say a "substantive
12 conversation," apparently you had some conversation
13 prior to today, wherein you were --
14         MR. DAVIS: I'm not going to get into the
15 content of any of the communications with the client.
16         MR. BARRY: Well, you already have, and
17 you've opened the door to that question, but you may
18 wish to review the local rules on your trip to
19 California. And I just note for the record, you
20 failed to file a motion to quash, and you failed to
21 move for a protective order, and you certainly had
22 ample opportunity to do both of those things, and
23 certainly the time wasn't so oppressive -- the notice
24 wasn't so oppressive that you couldn't have
25 communication with Mr. Andrews, as well as have

Page 15

1 Mr. Andrews appear here.
2         And in addition, Mr. Bailey also appeared
3 here today timely, and so that apparently wasn't with
4 or without your guidance as his attorney. Apparently
5 Mr. Bailey was able to -- able to make it here on
6 time. So that's all I have to say.
7         MR. BARRY: We're off the record.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 16

1         REPORTER CERTIFICATE
2         I, BRENDA S. ORSBORN, RPR, CSR, CCR, do
3 hereby certify that pursuant to the agreement
4 hereinbefore set forth, the following proceedings were
5 had before me; that the transcript has been reduced to
6 typewriting by me or under my supervision; that the
7 record is a true record of the proceedings had before
8 me.
9         I further certify that I am neither attorney
10 nor counsel for, nor related nor employed by any of
11 the parties to the action in which this Record of
12 Non-Appearance is taken; further, that I am not a
13 relative or employee of any attorney or counsel
14 employed by the parties hereto or financially
15 interested in this action.
16         Dated this 26th day of April, 2007.
17
18         Brenda S. Orsborn, RPR/CCR/CSR
19
20
21
22
23
24
25

5 (Pages 14 to 16)

**A**

ability 7:21
able 3:16 5:22 6:12
  11:13 14:9 15:5,5
account 4:5,5,7,16 9:3
  9:4 13:19
acknowledge 11:23
action 16:11,15
add 4:13 8:20 11:15,22
addition 15:2
admissible 4:18 9:5
advance 4:14 14:2
advanced 7:20 13:17
ago 3:14
AGREED 3:2
agreement 11:10 13:15
  16:3
Aileen 2:22
Alameda 2:18
allows 9:16
ample 14:22
Andrews 9:11 14:25
  15:1
anticipate 13:23
anticipated 13:16
anybody 3:22
apologize 12:14
apparently 3:11 5:16
  7:1,13 10:1 11:3,23
  14:12 15:3,4
appear 3:12 15:1
appeared 11:1 15:2
appears 6:16 10:6
April 1:14 2:11 16:16
arrangements 4:9
assert 8:9
asserted 8:8
attempt 9:17 11:4
  13:25
attempted 5:24
attempts 14:7,8
attorney 4:11 7:2 11:12
  15:4 16:9,13
available 4:9 7:3

**B**

back 3:9 5:2,3,23 11:8
  12:15,23
Bailey 3:11,11 5:1,20
  6:12,19 9:2,12,23
  11:1,10,12,17 12:3,23
  15:2,5
Barry 2:17,17 3:9 5:6,9
  6:1,18 7:23 8:7 9:7
  12:8,13 14:11,16 15:7
basis 6:21 13:5
behalf 1:15 2:11
believe 10:23 12:8
better 9:9
Bonino 2:20
bono 11:12

Boulevard 2:22
break 3:16
Brenda 1:18 2:13 3:5
  16:2,18
Brian 2:20
busy 12:18

**C**

C 2:15
California 1:1 2:1,18
  2:21 4:1 9:13,16
  14:19
call 5:23 11:7,7,8 12:5
  12:9,15,16 13:23
called 12:3,10 13:14
Card 4:6,8 9:3
case 4:15 9:18 10:8
  12:17
caused 8:23
CCR 16:2
Center 2:13
certainly 14:21,23
CERTIFICATE 16:1
Certified 2:13 3:6
certify 16:3,9
Charles 2:13,23
circumstances 3:15
CIV 1:7 2:7
clarify 5:16 10:4 11:16
  11:20 12:14
clear 7:13 10:24
client 1:8 2:8,22 6:6,8
  6:10 7:14,14 8:4,10
  10:16 13:9,11,22
  14:15
clients 8:18 14:6
client's 8:10
code 12:1
collection 4:7
come 3:17 12:23
comments 5:10
communicate 6:18
communication 5:11
  6:13,22,24 13:1 14:25
communications 8:18
  14:15
company 13:12
completely 12:1
comply 12:1
confer 4:24 8:25 9:17
  11:4,6
confirm 4:3 6:14
confirmed 4:3 6:14
connection 6:7 8:6
consent 7:24 8:14
  10:10,17 13:8
consented 10:18
consequently 4:19 9:4
consider 9:2
contact 3:25 5:25 14:8
  14:8
contacted 10:2

content 14:15
continue 13:15
contract 11:13
Convention 2:13
conversation 7:21 14:5
  14:10,12,12
conversing 7:1
correct 3:12,23 5:21
  10:13
counsel 2:22 3:3,3 4:24
  5:5,7,8,12 10:7 16:10
  16:16
County 2:17
Court 1:1 2:1 9:15
CSR 16:2
current 3:17,23 6:5,11
  7:15 8:5 13:12
C06-06280 1:7 2:7

**D**

D 2:17
Dated 16:16
Davis 1:8 2:8,20,20
  3:12,13 5:6,8,15 6:5,8
  7:11,24 8:1,15 9:22
  11:15,22 12:9 13:9
  14:14
day 2:12 12:4,6,7,10
  16:16
Defendants 1:9 2:9,20
  3:4
defending 6:10,15
defense 13:10
definition 10:5 13:21
depose 7:3
deposed 4:20
deposition 3:10 4:10,11
  4:25 5:3 6:16,17 7:1
  7:5,5,22 8:23 11:2,18
difference 6:10
direct 6:13
Discover 4:6,8 9:3
discoverable 4:18 9:5
dispensed 7:4,5
District 1:1,1 2:1,1
  9:15,15
DIVISION 1:2 2:2
Don 3:11 12:23
door 14:17
duly-noticed 3:10

**E**

E 2:15,15
East 2:17
educate 8:16 10:22
effort 8:25
either 12:5
Ellingson 2:21
Embassy 2:12
employed 16:10,14
employee 6:2,8 10:16
  16:13

employees 6:6,11 7:15
  7:17,17 8:6,13 10:5
  13:4,7,13,13
employment 3:17
engage 4:23
entire 8:13 10:9 13:6
evening 2:12
event 6:16
example 6:7
e-mail 5:19 11:5,23,24
  12:19

**F**

F 2:17,18
fact 4:3 5:6,20 6:1 7:18
  9:24
failed 14:20,20
fees 11:11
file 9:9 14:20
finally 6:13
financially 16:14
find 3:22
firm 2:20
first 2:18 3:15,18 5:13
  6:24 7:6 10:2 13:1
Floor 2:18
following 16:4
former 6:2,6,8,11 7:15
  7:17 8:5 10:5,16 13:4
  13:7,13
forth 16:4
forward 3:15 4:12 5:3
  11:2,18
frankly 6:9 8:23
further 16:9,12

**G**

General 2:22
getting 7:1 11:23 12:9
given 6:1
go 3:15 4:12 5:3 11:1
  11:18
going 3:12 8:19 14:14
gotten 12:11
guess 12:20
guidance 15:4

**H**

hallway 11:3,14 13:2
handled 7:19 11:17,25
  13:21
happen 9:18
happened 3:18
happens 10:20
Harry 2:22
Hayes 2:22
hereinbefore 16:4
hereto 16:14
home 3:19
hopefully 4:22
hotel 2:12 6:24 11:2,14
  13:2

hours 2:11

**I**

identity 9:1
Illinois 1:18
improperly 12:1
incendiary 9:21
Incorporated 6:6,9
  7:14 8:5 13:10,12,22
  14:6
indicated 3:14 5:12 7:7
  7:7 12:3,19
indicating 7:9
ineffective 8:22
information 4:18,23
  9:5,5
initially 6:4
insufficient 12:2
interest 8:10
interested 16:15
investigating 10:7
involvement 4:4,16 9:2
  13:19,20
IRMA 1:4 2:4

**J**

job 3:17 8:16
JORGE 1:4 2:4
Jose 1:2 2:2,18

**K**

Karla 1:8 2:8 6:8
Kerry 2:22
know 3:20 9:8,25 10:18
  10:19,21 12:18
knowledge 4:2,5,7,14
  4:15 7:24 8:14

**L**

L 3:1
language 9:21
late 3:15
law 2:17,20
learn 5:18
learned 5:17 10:2 14:5
  14:7
leave 11:19
left 3:24 5:20,25
License 1:18,19
licensed 10:12
litigation 3:22 4:2,6,17
  4:19 6:7 7:16 8:6 9:6
  10:18 13:11,14,20,24
  13:25
lobby 6:24
local 9:14 14:18
located 4:1
Louis 12:12

**M**

matter 5:19 6:12 7:4
  9:3

matters 12:17
McLay 2:21
meet 3:17 4:10,24 5:4
  8:25 9:17 11:4,6
messages 3:24 5:20,25
met 12:25
mind 6:2
Minnesota 2:17
minutes 7:6
Missouri 1:19 2:13,23
  10:10,12
misspoke 12:8,14
misstatements 11:16
misunderstood 5:16
moment 3:14 7:16
Monday 12:6
month 12:16
morning 2:12
motion 9:9,10 14:20
move 9:18 14:21

**N**

N 2:15 3:1
named 8:10
necessary 4:25
need 8:15
neither 7:19 16:9
never 4:6 13:19
nine 2:11
Non-Appearance 1:13
  2:11 3:4 16:12
Northern 1:1 2:1 9:15
note 9:8 14:19
noted 6:25
notice 3:20 7:20 8:22
  10:19 12:2 13:18
  14:23
notion 6:3
number 3:24
numbers 5:21

**O**

O 3:1
Oakland 12:20
object 9:20,22
objecting 8:21
objections 9:8
obvious 8:21
obviously 8:15,19
  13:16,21 14:1
occurred 3:21
office 2:17 12:4,6 13:23
Okay 5:9
Once 14:3
opened 14:17
opportunity 4:22 5:4
  5:13,24 14:1,22
oppressive 14:23,24
order 9:10,19 14:21
Orsborn 1:18 2:13 3:5
  16:2,18
o'clock 2:12,12

**P**

P 2:15,15 3:1
paid 11:11
Parkway 2:21
particular 10:25
parties 8:11 16:11,14
party 4:20 9:17 10:25
Paul 2:17
people 10:10
permitted 13:5
persist 12:20
person 7:23
Peter 2:16
phone 3:23 5:21 11:7,7
piece 13:24
Plaintiff 3:3
plaintiffs 1:6,15 2:6,11
  2:16 4:24
Plaza 2:13
point 8:3
position 11:25
possess 4:17
possesses 9:4
possible 7:25 8:12
  12:21
prepare 4:11 5:5
prepared 5:1 11:18
prevent 10:7,14
prevented 7:20 14:4
preventing 13:3
previously 11:5
print 3:7
prior 6:19 14:13
privileged 8:19
privy 10:11
pro 11:12
problem 7:7 10:3
problems 8:24
proceed 5:2
proceedings 16:4,7
produced 9:11,12
Professional 2:14 3:5
proper 4:19
protective 9:10,19
  14:21
provided 7:20 12:2
publish 10:19
pull 13:24,25
purposes 6:10
pursuant 16:3
PVT 1:7 2:7

**Q**

quash 9:9,19 14:20
question 8:11 11:9
  12:21 14:17

**R**

R 2:15,20
ready 11:1
reasonable 5:4

reasons 4:12
recall 12:6,9
record 1:13 2:11 3:4,9
  3:14 4:4 6:14,23 8:20
  10:13 12:14,22,24
  14:19 15:7 16:7,7,11
reduced 16:5
Redwood 2:21,21
regarding 3:22 11:25
Registered 2:14 3:5
related 4:24 12:17
  16:10
relative 16:13
remind 8:4
Reporter 2:14,14 3:6,6
  16:1
represent 6:5,15 7:13
  7:23 8:4,13 9:23,24
  9:25 10:9,15,25 12:24
  12:25 13:6,12
representation 6:20
  7:18 8:2,17 10:22
represented 2:16,20
  6:3,4,21,23 7:8 12:23
respect 4:8 7:15 8:18
  8:25 9:10,12,22 10:17
  11:6,12 12:15
result 11:17
retained 7:2,10,12 13:9
  13:11
retainer 11:10
return 4:22 11:8 12:16
returned 11:6,7
review 14:18
Road 2:17
Ron 5:19
Ronald 2:17
RPR 16:2
RPR/CCR/CSR 16:18
RPR/CSR 1:18
rules 9:14 14:18

**S**

S 1:18 2:13,15,22 3:1,5
  16:2,18
San 1:2 2:2,18
Sanchez 1:4,4,5 2:4,4,5
  4:4,5,16 9:3 13:10,19
  13:20
Saturday 5:19 11:25
  12:4,5
saying 7:11
schedule 12:20
scheduling 9:1
Scott 2:21
second 8:17
see 4:25
seek 10:21
seeking 10:6,7
send 11:5
sent 5:19 11:24
serve 9:16

served 3:19 7:16 14:3
Service 7:14
services 1:8 2:8,22 6:6
  6:8,11 7:14 8:4,10
  9:4 10:16 11:13
  13:10,11,22 14:6
serving 14:2
set 16:4
sheriff 3:19
Shores 2:21,21
short 3:16
Shorthand 2:13 3:6
signed 11:10
Simpson 2:22
single 10:15
six 2:12
solitary 10:16
soon 5:17 14:5,6
SOPHIA 1:4 2:4
sorry 8:1
sought 6:18
sounds 5:21
speak 5:14
spent 6:25
St 2:13,17,22 12:12
start 13:15
state 8:12 13:6
States 1:1 2:1 9:15
stating 8:3 10:9,15
STIPULATED 3:2
subject 4:17
subpoena 3:11,19 5:18
  7:17 9:16,19 13:17
  14:2,3,6,7
subpoenaed 4:15
substantive 7:21 14:9
  14:11
Suite 2:18,21
Suites 2:12
supervision 16:6
surprisingly 3:25

**T**

T 3:1,1
tactic 9:23 13:3
take 3:16
taken 11:3 15:3 16:12
talk 5:24 14:1
talked 6:4 11:3
talking 11:24 13:3
telephone 5:23
tell 12:24
telling 6:22 9:23
thing 11:15,22
things 14:22
think 10:12
third 9:16
Thursday 13:17
time 3:18 4:9,10 6:25
  7:3 10:2 11:5 13:1
  14:23 15:6
timely 15:3

today 3:15,23 4:12 5:2
  5:12 6:22,25 7:9,12
  9:13 10:3 11:1,19
  12:24 14:10,13 15:3
told 6:20 12:22
transcribed 3:7
transcript 16:5
traveling 12:11
trial 12:20
trip 14:18
true 16:7
Truman 2:22
trust 10:22
trying 9:21
Tuesday 12:10,12
Two 2:12
typewriting 16:6

**U**

U 3:1
unable 3:14,21,25
unaware 7:25
understand 8:2,7,8,9
  9:7,14 10:14
understanding 5:9
  10:24 12:15
Unfortunately 14:9
unilaterally 8:12 10:8
  10:15 13:6
United 1:1 2:1 9:14
universe 8:13 10:9 13:7
unreasonable 8:22
untenable 13:4
use 9:21

**V**

v 1:7 2:7

**W**

want 8:8
wasn't 7:12 8:21 14:23
  14:24 15:3
way 5:1,2 7:19 11:17
  13:21,22 14:3
week 3:24 4:21,22 9:9
  12:19
we're 3:9 15:7
Wilcox 2:18 11:7,20
  12:13
wish 14:18
witness 4:14,20 9:1
  13:17,18,23
witnesses 13:14
work 4:7,9 5:2,3
worked 4:6
works 8:2,17
wouldn't 12:11

**Y**

Yeah 3:13 12:13
yesterday 5:10,17 6:19
  7:8 9:11,25 10:1

12:22

**0**

**084-003460** 1:18

**1**

**12** 1:14 2:11

**2**

**2007** 1:14 2:11 16:16
**203** 2:21
**2160** 2:18
**26th** 16:16

**3**

**342** 2:17
**3420** 2:22

**4**

**480** 2:21

**5**

**50** 7:6
**55117** 2:17

**6**

**63301** 2:23
**63303** 2:13

**9**

**914** 1:19
**94065** 2:21
**95126** 2:18