1

2

3

4

5

6

7

8

9

10

11

12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IRMA SANCHEZ, JORGE SANCHEZ and SOPHIA SANCHEZ, | No. C-06-6280 PVT |
| Plaintiffs, | **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| CLIENT SERVICES, INC. and KARLA DAVIS, | **[Docket Nos. 45 and 48]** |
| Defendants. / | |

**INTRODUCTION**

Plaintiffs Irma Sanchez, Jorge Sanchez and Sophia Sanchez and defendants Client Services, Inc. and Karla Davis all move for partial summary judgment. Plaintiffs move for partial summary judgment on the claims alleging violations of Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. and Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33. Plaintiffs allege that defendants engaged in harassing, abusive and oppressive efforts to collect consumer debt. Defendants move for partial summary judgment on the claims of punitive damages. Defendants allege that plaintiffs have not shown any conduct by them evidencing malice, fraud or oppression. Plaintiffs and defendants oppose each others' respective motions for partial summary

**United States District Court**
For the Northern District of California

1   judgment.  Having reviewed the papers and considered the arguments of counsel, including

2   defendants' accompanying objections to plaintiffs' evidence, and for the reasons set forth below,

3   plaintiffs' motion for partial summary judgment is granted in part and denied in part and defendants'

4   motion for partial summary judgment is denied.[1]

5                                      **BACKGROUND**

6          Plaintiff Irma Sanchez owed $4,069.11 on a Discover credit card.  The debt related to her

7   purchases of food, clothing and shelter.  Because of delays in payment on the account, Discover

8   transferred the credit card debt to defendant Client Services for collection.

9          Defendant Client Services is a debt collection services company located in St. Louis,

10  Missouri.  The company employs approximately 500 people and trains them regarding applicable

11  state and federal laws governing debt collection practices.  Telephone calls made by collectors to

12  debtors are monitored on a daily basis by company managers.  Collectors may also call a debtor's

13  workplace and other third parties, including neighbors and relatives, to determine the specific

14  whereabouts of a debtor.  Systematic correspondence may also be generated by the company in an

15  effort to make further contact with a debtor.  In addition, collectors record their various attempts to

16  reach the debtor and other pertinent information on computerized call logs maintained by the

17  company.

18         In or about and between June 9, 2005 and December 19, 2005, defendant Client Services

19  undertook a myriad of efforts to locate and contact plaintiff Irma Sanchez about her credit card debt.

20  Defendant Karla Davis was employed by defendant Client Services from May 2005 until July 2006

21  and was among the various collectors assigned by the company to plaintiff Irma Sanchez's account.

22

23         Because plaintiff Irma Sanchez's home telephone was disconnected (or otherwise

24  _____

25         [1]      Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all
    proceedings in this matter may be heard and finally adjudicated by the undersigned.

26         Evidence has been cited only if the court considered it admissible.  However, statements or evidentiary rulings made
    in this order do not constitute issues deemed established for purposes of trial.  *See,* Civ. L.R. 56-3.

27         The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

28

                                              2

**United States District Court**
For the Northern District of California

unpublished) at various times, defendant Client Services made numerous attempts to reach her at work. Plaintiff Irma Sanchez was a food service worker in the cafeteria at the Milpitas School District and was generally unreachable by telephone while she worked there. Anyone who sought to contact her or wanted to leave a message for her reached a general telephone line for the central kitchen which was monitored and checked by the kitchen supervisor, Jean Heraldsen. According to company call logs, defendant Client Services attempted to reach plaintiff Irma Sanchez at work approximately 54 times and left messages for her approximately 25 times on the answering machine. Jean Heraldsen testified that defendant Client Services never identified itself as a debt collection services company and never stated that the matter related to an outstanding debt. Instead, collectors from defendant Client Services left messages for plaintiff Irma Sanchez to return their calls because the matter was identified as "urgent" or "serious." Jean Heraldsen personally transcribed the messages left on the answering machine for plaintiff Irma Sanchez or allowed her to listen to the messages on the answering machine itself in her office. Transcribed messages from the answering machine were personally (and only) delivered by Jean Heraldsen. Jean Heraldsen further testified that it was plaintiff Irma Sanchez herself, who informed her that she was struggling with marital and financial problems.

On at least two occasions, defendant Client Services reached two co-workers of plaintiff Irma Sanchez: (1) on or about November 14, 2005, defendant Client Services left a message with a co-worker (named Ivalia) of plaintiff Irma Sanchez; and (2) on or about October 28, 2005, defendant Client Services also called Irma Sanchez's sister-in-law, Maria Isles, who coincidentally worked at the same place. Defendant Davis left a message with her for plaintiff Irma Sanchez. No mention was ever made of the outstanding debt.

In specific contradiction to her supervisor Jean Heraldsen, plaintiff Irma Sanchez alleges that telephone messages left for her at work stated that she had incurred a debt and that she had to pay. She further alleges that the telephone messages were relayed to her in a room where other co-workers were present.

Defendant Client Services also called the cell phone belonging to plaintiff Irma Sanchez. On at least one occasion, plaintiff Irma Sanchez's 17 year old daughter, Sophia Sanchez answered her

mother's cell phone and incorrectly informed defendant Client Services (at her mother's behest) that her mother was unavailable. Sophia Sanchez answered her mother's cell phone because her mother had difficulty with English, and she was often able to translate for her mother. In two messages left by a male caller from defendant Client Services, he left his name and asked that plaintiff Irma Sanchez call back. Later, defendant Karla Davis called and in a demanding tone of voice asking that Sophia Sanchez inform her mother about the telephone calls. Sophia Sanchez was never threatened or made fearful by the numerous telephone calls. She did, however, fear the legal consequences of the debt incurred by her mother.

Upon reaching plaintiff Irma Sanchez's husband on his cell phone on or about October 31, 2005, Jorge Sanchez, pointedly stated to defendant Davis, "Don't call me" and hung up. In response to other calls by defendant Davis, Mr. Sanchez requested twice that defendant Client Services refrain from making further telephone calls to his wife's workplace. The telephone calls to plaintiff Irma Sanchez's workplace nonetheless continued. Mr. Sanchez also offered to make payments on the debt but was rebuffed. He claims that defendant Davis laughed at him and said that he should have thought of that before the debt was incurred. At times, defendant Davis threatened to take him to court. As a result, Mr. Sanchez suffered from significant stress that caused him to lose sleep and drink heavily.

As part of its efforts to locate plaintiff Irma Sanchez, defendant Client Services sent her a systems-automated generated letter on September 9, 2005, which stated in pertinent part:

> You made a commitment to honor this obligation [of $4,069.11] when our client granted you credit. This commitment has not been kept. . . . call our office today. Our toll free number is 1-800-521-3236.

> This communication is from a professional debt collection agency. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

On or about November 4, 2005, defendant Client Services also sent a letter to the Milpitas School District in an attempt to verify the employment of plaintiff Irma Sanchez and obtain any further location information (including a home address and telephone number). A response to the letter was never received by defendant Client Services.

Plaintiff Irma Sanchez has difficulty speaking English and by her own admission, she never

1    returned any of the telephone messages left by defendants Client Services and Karla Davis or

2    otherwise tried to contact them.  Indeed, plaintiffs never informed defendants that the telephone calls

3    or other efforts to reach them were harassing or bothersome.  Defendants claim they never knew that

4    plaintiff Irma Sanchez was a predominantly Spanish-speaking person.

5        Plaintiff Irma Sanchez was embarrassed and humiliated by the barrage of telephone calls to

6    her work, family and neighbors.  She too, experienced significant stress which impacted her

7    marriage and her health and caused her to later consult a physician.

8        Defendant Client Services undertook an internal investigation into the manner in which

9    efforts to reach plaintiff Irma Sanchez were conducted.  Based on the investigation, the company

10   concluded that the account was handled properly.  No employees were ever disciplined for the

11   handling of the Sanchez account.  Defendant Karla Davis later resigned from the company for her

12   own personal reasons.[2]

13       On December 19, 2005, defendant Client Services closed the Sanchez account without any

14   further action or payment from her whatsoever.

15       On October 5, 2006, plaintiffs filed a complaint alleging, *inter alia,* violations of state and

16   federal Fair Debt Collection Practices Acts and sought statutory and punitive damages, costs and

17   reasonable attorneys' fees.  Plaintiffs allege that defendant and its employees, including Karla Davis,

18   engaged in abusive, deceptive and harassing tactics to recover the credit card debt. On November 17,

19   2006, defendant Client Services filed an answer and on March 14, 2007, defendant Davis, then

20   formerly employed by Client Services, also filed an answer.

21       On September 18, 2007, the parties filed their motions for partial summary judgment.  On

22   October 2, 2007, the parties filed their oppositions to each others' motions and on October 9, 2007,

23   the parties filed their replies.

24                                    **LEGAL STANDARD**

25       A motion for summary judgment should be granted if there is no genuine issue of material

26   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson*

27   _____

28       [2]    Defendant Client Services's personnel records show that defendant Karla Davis was to be terminated for
     being a low-performer but she resigned beforehand for her own personal reasons.

5

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   *v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986).  The moving party bears the initial burden of

2   informing the court of the basis for the motion, and identifying portions of the pleadings,

3   depositions, answers to interrogatories, admissions or affidavits which demonstrate the absence of a

4   triable issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  In order to meet

5   its burden, "the moving party must either produce evidence negating an essential element of the

6   nonmoving party's claim or defense or show that the nonmoving party does not have enough

7   evidence of an essential element to carry its ultimate burden of persuasion at trial   *Nissan Fire &*

8   *Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

9        If the moving party meets its initial burden, the burden shifts to the nonmoving party to

10  produce evidence supporting its claims or defenses.  *See*, Fed. R. Civ. P. 56(c); *Nissan Fire &*

11  *Marine Ins. Co. v. Fritz Cos.,* 210 F.3d at 1102.  The nonmoving party may not rest upon mere

12  allegations or denials of the adverse party's evidence, but instead must produce admissible evidence

13  that shows there is a genuine issue of material fact for trial.  *See id.*  Further, it must "identify with

14  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allen,* 91 F.3d

15  1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.

16  1995))(stating that it is not a district court's task to "scour the record in search of a genuine issue of

17  triable fact.").  A genuine issue of fact is one that could reasonably be resolved in favor of either

18  party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.

19  *Anderson,* 477 U.S. at 248-49.

20                        **DISCUSSION**

21  **I.**   **Plaintiffs' Motion for Partial Summary Judgment**

22       For purposes of the instant motion, the parties agree that plaintiff Irma Sanchez is a

23  consumer, defendants Client Services and Karla Davis are debt collectors and the matter relates to

24  the collection of a consumer debt within the meaning of state and federal fair debt collection

25  practices acts.[3]  The parties also agree that defendants Client Services and Karla Davis made

26   

27       [3]     The parties dispute whether plaintiff Sophia Sanchez has standing to assert violations under state and
    federal fair debt collection practices acts.  The federal fair debt collection practices act defines a "consumer" as "any natural

28  person obligated or allegedly obligated to pay any debt."  15 U.S.C. §1692a(3).  The state fair debt collection practices act
    defines a "debtor" as a "natural person from whom a debt collector seeks to collect a consumer debt which is due and owing

United States District Court
For the Northern District of California

1  approximately 54 telephone calls to her workplace and left approximately 25 telephone messages for

2  plaintiff Irma Sanchez there.  The number of telephone calls and messages left for her is documented

3  in call logs maintained by the company and by the testimony of plaintiff Irma Sanchez's supervisor,

4  Jean Haraldsen.  The parties disagree, however, as to the substance of some of the messages left at

5  the workplace and with others.  The issues are: (1) whether the disputed substance of some of the

6  telephone calls constitutes a genuine issue of material fact; and (2) whether the telephone calls made

7  by defendants Client Services and Karla Davis to plaintiffs and others violate state and federal fair

8  debt collection practices acts.

9      "The [federal Fair Debt Collection Practices Act ("FDCPA")] was enacted 'to eliminate

10  abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain

11  from using abusive debt collection practices are not competitively disadvantaged, and to promote

12  consistent state action to protect consumers against debt collection abuses." *Oei v. N. Star Capital*

13  *Acquisition, LLC,* 486 F. Supp.2d 1089, 1093 (C.D. Cal. 2006).

14      In making a determination whether defendants' conduct violated the state and federal fair

15  debt collection practices acts as a matter of law, the court applies a "least sophisticated debtor"

16  standard.  *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222 (9th Cir. 1989). The

17  standard applies to an "allegation that debt collector violated Fair Debt Collection Practices Act by

18  making threat to take any action that cannot be legally taken." *Id.* at 1227.

19  **A.      Defendants' Alleged Violations of Federal Fair Debt Collection Practices Act, 15**

20  **U.S.C. §§ 1692b(1), 1692b(2), 1692b(3) and Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788.12 and 1788.17**

21  **1.      Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692b(1), (2) and**

22  **(3)**

23  The Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692b(1)(2) and (3) states in

24  pertinent part as follows:

25      Any debt collector communicating with any person other than the consumer for the purpose
    of acquiring location information about the consumer shall–

26

27  or alleged to be due and owing from such person."  California Civil Code § 1788.2.  Under either of these definitions, it is

28  undisputed that plaintiff Sophia Sanchez did not owe the debt or was otherwise obligated to pay the debt.  As such, she has no standing to assert violations under the state and federal fair debt collection practices acts here.

United States District Court
For the Northern District of California

(1)    identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2)    not state that such consumer owes any debt;

(3)    not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information.

Plaintiffs argue that defendants Client Services and Karla Davis violated the above-specified subsections of the federal fair debt collection practices act by repeatedly calling plaintiff Irma Sanchez at her workplace.  Indeed, call logs maintained by the company confirm that callers from defendant Client Services attempted to reach plaintiff Irma Sanchez by telephone at her workplace approximately 54 times and that the callers left messages on the answering machine approximately 25 of those times.  Several employees of defendant Client Services, including defendant Karla Davis, stated that the purpose of repeatedly calling and leaving messages for plaintiff Irma Sanchez was to have her call back.  Because of her limited English, plaintiff Irma Sanchez admits she never called back or returned any of the telephone messages left for her.

Defendants respond that the repeated telephone calls were made to plaintiff Irma Sanchez's workplace at various times to confirm her location, verify her employment or alternatively, to have her return their calls.  In collections industry parlance, defendants sought to obtain, *inter alia,* "location information."  As plaintiff Irma Sanchez never returned any of their telephone calls or messages and the home telephone number was disconnected (or otherwise unpublished), defendants Client Services and Karla Davis continued to call the available workplace numbers.  Until defendants were able to make contact with plaintiff Irma Sanchez, defendants believed that their information was "incomplete" within the meaning of the statute.  Additionally, defendants respond that the relevant sections of the federal laws were not violated because their callers properly identified themselves and never disclosed to the employer or other third parties that they sought to contact plaintiff Irma Sanchez due to an outstanding debt.

The evidence is uncontroverted that callers from defendant Client Services made approximately 54 telephone calls and left approximately 25 messages on the answering machine in

**United States District Court**
For the Northern District of California

numerous attempts to reach plaintiff Irma Sanchez at her workplace.  Jean Heraldsen retrieved the numerous messages from the answering machine for the general telephone line of the kitchen and either personally transcribed the messages for plaintiff Irma Sanchez or allowed her to listen to the messages in an office.  On at least two other occasions, defendants spoke to certain co-workers of plaintiff Irma Sanchez, including her sister-in-law Maria Isles on October 28, 2005 and a co-worker named Ivalia on November 14, 2005.  In addition, plaintiff Jorge Sanchez requested that defendant Karla Davis cease from making further telephone calls to his wife's workplace.  Jerry Peterson of defendant Client Services stated that communications with others other than the debtor would not have "completed" their information and their own internal investigation concluded that the Sanchez account had been handled properly.

On the outgoing message of the answering machine, Jean Heraldsen identified herself as the recipient of the telephone messages left on the answering machine.  Defendants therefore, knew that their telephone calls had reached a third party.  Neither she nor plaintiff Irma Sanchez ever returned any of the messages left by defendants.  Notwithstanding the two telephone calls had by defendants with two of plaintiff Irma Sanchez's co-workers and at least one telephone call with her husband confirming they had reached plaintiff Irma Sanchez's workplace, defendants made at least five more telephone calls to her workplace from November 14 to December 19, 2005.  Specifically, defendants left a message for plaintiff Irma Sanchez each day on the 5575 telephone line from August 1 until August 5, 2005.  The telephone calls continued throughout that month occurring again on August 9, 17, 23, 29 (three calls).  Defendants' argument, however, that the repeated telephone calls made to plaintiff Irma Sanchez's workplace was based on incomplete location information creates a triable fact issue as to whether theirs, was a "reasonable belief."  Accordingly, plaintiffs' motion for partial summary judgment as to this claim is denied.

> **2.     Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788.12 and 1788.17**

> **a.     California Civil Code § 1788.12**

Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788.12 states in pertinent part as follows:

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a)     Communicating with debtor's employer regarding the debtor's consumer debt unless such communication is necessary to the collection of the debt, or unless the debtor or his attorney has consented in writing to such communication. A communication is necessary to the collection of debt only if it is made for the purposes of verifying the debtor's employment, locating the debtor, or effecting garnishment after judgment, of the debtor's wages, or in the case of a medical debt for the purpose of discovering the existence of medical insurance. Any such communication, other than a communication in the case of a medical debt by a health care provider or its agent for the purpose of discovering the existence of medical insurance, shall be in writing unless such written communication receives no written response within 15 days and shall be made only as many times as is necessary to the collection of the debt. Communications to the debtor's employer regarding a debt shall not contain language that would be improper if the communication were made to the debtor. One communication solely for the purpose of verifying the debtor's employment may be oral without prior written contact.

(b)     Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of the debtor who is either a minor or who resides in the same household with such parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has consented in writing to such communication;

(c)     Communicating to any person any list of debtors which discloses the nature or existence of a consumer debt, commonly known as "deadbeat lists," or advertising any consumer debt for sale, by naming the debtor; or

(d)     Communicating with the debtor by means of a written communication that displays or conveys any information about the consumer debt or the debtor other than the name, address and telephone number of the debtor and the debt collector and which is intended both to be seen by any other person and also to embarrass the debtor.

(f)     Notwithstanding the foregoing provisions of this section, the disclosure, publication or communication by a debt collector of information relating to a consumer debt or the debtor to a consumer reporting agency or to any other person reasonably believed to have a legitimate business need for such information shall not be deemed to violate this title.

Plaintiffs argue that violations of the federal fair debt collection practices act also constitute violations of the state fair debt collection practices act. Specifically, plaintiffs note that the relevant California civil code sections incorporate 15 U.S.C. §§ 1692b, 1692c, 1692d, 1692e and 1692f. As such, defendants' previously stated and unlawful conduct in violation of federal fair debt collection practices act also constitutes a violation of the state fair debt collection practices act.

Defendants argue as they have above, that their conduct does not violate state or federal fair

10

1    debt collection practices acts.

2       Only sections (a) and (b) apply in the instant action.  The parties dispute whether defendants

3    ever communicated the nature of the telephone calls to plaintiff Irma Sanchez's employer in any of

4    the telephone messages left on the answering machine or to co-workers.  Jean Heraldsen states that

5    the nature of the telephone calls was never disclosed.  Rather,  telephone messages left for plaintiff

6    Irma Sanchez, included the name, telephone number and statement that the matter was "serious" or

7    "urgent."  Plaintiff Irma Sanchez counters that the telephone messages disclosed the credit card debt

8    to her employer and extended family and that the tone and substance were ominous.

9       Defendants also left messages with plaintiff Irma Sanchez's daughter, Sophia Sanchez,

10   because she answered her mother's cellular telephone even though her mother was actually present.

11   Sophia Sanchez stated that the messages consisted of a name and telephone number and that she was

12   never threatened or feared for her own safety.  Plaintiff Irma Sanchez contradicts her daughter's

13   statements and claims she was informed by her that indeed, she was threatened.  As there is a dispute

14   regarding a genuine issue of material fact, plaintiffs' motion for partial summary judgment as to this

15   claim is denied.

16              **b.    California Civil Code § 1788.17**

17

18       Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788.17 states in

     pertinent part as follows:

19

20           Notwithstanding any other provision of this title, every debt collector collecting or
             attempting to collect a consumer debt shall comply with the provisions of Section 1692b to

21           1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the
             United States Code.

22

23       As discussed above, the court has found that there are genuine issues of material fact as to

24   whether defendants violated 15 U.S.C. § 1692b.  However, as discussed below, the court has found

25   that there is no genuine issue of material fact regarding defendants' violation of 15 U.S.C. §1692d

26   (5).  The Rosenthal Fair Debt Collection Practices Act incorporates provisions 1692b to 1692j of the

27   federal fair debt collection practices act.  Accordingly, plaintiffs' motion for partial summary

28   judgment as to this claim is granted.

**United States District Court**
For the Northern District of California

**B.      Defendants' Alleged Violations of Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692c(a)(1), c(a)(3) and c(b)**

The Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692c(a)(1), c(a)(3)and c(b) states in pertinent part as follows:

>   (a)      Communications with the consumer generally
>
>           Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –
>
>   (1)      at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;
>
>   (3)      at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.
>
>   (b)      Communication with third parties
>
>           Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Based on similar arguments set forth above, plaintiffs complain that defendants repeated telephone calls to plaintiff Irma Sanchez's workplace occurred at inconvenient times and at an inconvenient place for her.

Relying on their own prior arguments as well, defendants contend that plaintiffs' motion for partial summary judgment must fail.

Plaintiffs cite to no evidence which demonstrates that defendants "should have known" or that it "should [have been] known" to them that the time and place for their communications was inconvenient to plaintiff Irma Sanchez.  Jean Heraldsen stated that the general telephone line in the kitchen was available for telephone calls and messages for the workers.  She further testified that

United States District Court
For the Northern District of California

plaintiff Irma Sanchez was not prohibited from receiving telephone calls there.  In addition, plaintiff Irma Sanchez never communicated to defendants that it was inconvenient for them to reach her at work.  Only Jorge Sanchez informed defendants to stop calling his wife at work.  In the various telephone messages left on the answering machine or with co-workers, the parties dispute whether mention was made of plaintiff Irma Sanchez's credit card debt.  Accordingly, plaintiffs' motion for partial summary judgment as to this claim is denied.

### C.   Defendants' Alleged Violations of Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692(d)(1), 1692d(2) and 1692d(5)

The Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, d(1), d(2) and d(5) states in pertinent part as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1)   The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

> (2)   The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

> (5)   causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

Plaintiffs' motion for partial summary judgment as to subsections (1) and (2) of §1692d is denied.  The parties dispute whether defendants used threats when they made telephone calls to plaintiff Irma Sanchez and others.  For example, both plaintiffs Irma Sanchez and Jorge Sanchez allege that specific threats were made to take her to court and perhaps, to jail.  Neither Jean Heraldsen nor Sophia Sanchez proffered any evidence of threats.  Defendants Client Services and Karla Davis also deny that threats were ever made to plaintiffs, at work or through her family.  As such, there are genuine issues of material fact that preclude finding an absence of a triable issue.

With respect to subsection (5), the parties agree that defendants Client Services and Karla Davis made approximately 54 telephone calls to plaintiff Irma Sanchez at work and left approximately 24 messages on the answering machine.  Defendant Karla Davis stated that she

1    repeatedly called plaintiff Irma Sanchez at work to have her call back, to verify her employment or

2    alternatively, to obtain location information.  As discussed above, however, a number of calls were

3    made on the same day within a limited scope of time.  For example, in September, defendants made

4    approximately 17 telephone calls to plaintiff at work, or to her family.  On September 14, 2005,

5    defendants made at least 6 telephone calls alone.  Defendants admittedly made numerous other

6    telephone calls to her husband and other family members.  Irrespective of the substance of the

7    telephone messages, the court finds that the volume of telephone calls made to plaintiff Irma Sanchez

8    by defendants from June 9, 2005 until December 19, 2005 is undisputed.  *See, Kuhn v. Account*

9    *Control Tech., Inc.,* 865 F.Supp. 1443, 1452 (D.Nev. 1994)(content or substance of the telephone

10   calls may be irrelevant to issue of harassment).  Defendants merely counter that the number of

11   telephone calls were made in an effort to contact plaintiff or verify her employment and that the calls

12   were made during regular working hours.

13          Other courts have considered the volume and the pattern of the calls received by the debtor.

14   *See, e.g., Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. at 1453 (six telephone calls in 24 minutes

15   constituted harassment in violation of §1692d(5)); *Bingham v. Collection Bureau, Inc.,* 505 F.Supp.

16   864, 873 (N. N.D. 1981)(court held when a call was terminated and collection agency called back

17   immediately, the subsequent call alone could constitute harassment under §1692d(5)).  *Cf., Joseph v.*

18   *J.J. Mac Intyre Companies, LLC,* 281 F.Supp.2d 1156, 1164-1166(N.D. Cal. 2003)(court denied debt

19   collector's motion for summary judgment on grounds that although parties agreed that 75 telephone

20   calls were made within the statutory period, parties disputed whether defendants' automated calls

21   constituted a pattern of harassment against plaintiff or to three other indebted inhabitants who shared

22   the same telephone number); *Akalwadi v. Risk Management Alternatives, Inc.,* 336 F.Supp.2d 492,

23   (D.Md. 2004)(reasonableness of volume and pattern of calls was a question of fact for the jury).

24   Even viewing the record in the light most favorable to defendants, the frequency and volume of the

25   telephone calls show that defendants intended to annoy, abuse and harass plaintiff Irma Sanchez.

26   Accordingly, plaintiffs' motion for partial summary judgment as to this claim is granted.

27

28

**United States District Court**
For the Northern District of California

**D.** **Defendants' Alleged Violations of Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(11)**

The Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692e states in pertinent part as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt

Based on the facts in the instant action, plaintiffs argue that defendants' conduct constitutes a violation of this section of the federal fair debt collection practices act. As discussed above, defendants deny any violation of this section of the fair debt collection practices act and refer to the testimony of their various collectors, including defendant Karla Davis, as well as the testimony of Jean Heraldsen. Plaintiff Jorge Sanchez alleges that defendant Karla Davis threatened further court action during the course of her efforts to collect the credit card debt. As there is a dispute as to a genuine issue of material fact, plaintiffs' motion for partial summary judgment as to this claim is denied.

With respect to 15 U.S.C.§ 1692e(11), it states in pertinent part as follows:

The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . .

Plaintiffs further argue that defendants violated this subsection of the federal fair debt collection practices act by failing to provide plaintiff Irma Sanchez with proper notice. Defendants respond that this subsection also known as the "mini-miranda" does not apply to their communications with third parties. As defendants never communicated with plaintiff Irma Sanchez (except in the September 9, 2005 letter that apparently does contain proper notice) and the subsection does not apply to defendants' communications with third parties, plaintiffs' motion for partial summary judgment as to this claim is denied.

**E.** **Defendants' Alleged Violations of Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692f**

The Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692f states in pertinent part as

15

1  follows:

2          A debt collector may not use unfair or unconscionable means to collect or attempt to
        collect any debt.

3

4          As discussed above, the parties dispute the substance of the telephone calls and messages left

5  for plaintiff Irma Sanchez.  Plaintiffs Irma and Jorge Sanchez allege that defendants used specific

6  threats in seeking to collect on the outstanding debt.  Defendants refute this evidence by citing the

7  testimony of their current and former employees.  Defendants also single out the testimony of Jean

8  Heraldsen and Sophia Sanchez in showing that defendants did not use threats.  In determining

9  whether defendants used "unfair and unconscionable means to collect or attempt to collect any debt,"

10 the substance of the telephone calls and messages left for plaintiff Irma Sanchez is genuine issue

11 material fact.  Accordingly, plaintiffs' motion for partial summary judgment as to this claim is denied.

12 **II.      Defendants' Motion for Partial Summary Judgment**

13         Defendants move for partial summary judgment on the punitive damages claim.  Defendants

14 argue that plaintiffs cannot demonstrate by clear and convincing evidence that defendants' conduct

15 was oppressive, fraudulent or malicious.  Therefore, defendants argue there is no justification for an

16 award of punitive damages and their motion for partial summary judgment should be granted.[4]

17         Because plaintiff Irma Sanchez never took any of their telephone calls or returned any of their

18 messages, defendants Client Services and Karla Davis argue that repeated telephone calls were

19 necessary to locate her.  Defendants next argue that testimony from its own collectors, including

20 Karla Davis, and from the kitchen supervisor, Jean Heraldsen, confirm that no mention was ever

21 made of the credit card debt to plaintiff Irma Sanchez's employer or others.  Finally, defendants argue

22 that the notation on the call logs,  "No calls POE [place of employment]," was made by Discover,

23 subject to ambiguous interpretation and never relied upon by defendants in their collection efforts.

24         In response to defendants' motion for partial summary judgment, plaintiffs assert that

25 _____

26         [4]        In support of their argument that punitive damages are unwarranted here, defendants cite
   to *Wood v. Midland Credit Management, Inc.,* Not Reported in F. Supp.2d, 2005 WL 3159639 (C.D.
27 Cal.)(punitive damages not available under FDCPA).  However, the citation is unavailing to the instant
   action as plaintiffs are seeking punitive damages pursuant to the state law claims set forth in the
   complaint.

28

**United States District Court**
For the Northern District of California

1  defendants' reprehensible conduct toward plaintiff Irma Sanchez warrants an award of punitive

2  damages.  Specifically, plaintiffs allege that defendants made 100 telephone calls to third parties,

3  including 64 telephone calls to plaintiff Irma Sanchez's workplace, and defendants allegedly made

4  false and extortionist threats of investigations, court action and jail.  Plaintiffs further allege that

5  defendants knew the whereabouts of plaintiff Irma Sanchez because they had her home address, her

6  work address and several telephone numbers at her workplace.  On June 27, 2007, defendants were

7  informed by a co-worker that she was not at work that day.  This was noted in call logs maintained by

8  defendants.  Nonetheless, defendants continued to call plaintiff Irma Sanchez at work approximately

9  58 more times.  Other specific "location information" held by defendants, included her current credit

10  report and her cellular telephone number.  Plaintiffs contend that issues related to witness credibility

11  and intent are questions for the jury and summary judgment is improper here.

12        The parties dispute whether defendants used any actual threats against plaintiffs, including

13  threats of an investigation, court action or notifying her or other family members that she would go to

14  jail.  As noted above, Jorge and Irma Sanchez allege that certain threats were made against her by and

15  through her family and co-workers.  Others, including Jean Heraldsen and defendants themselves

16  state that no threats were ever made.  The parties generally agree, however, on the number of

17  telephone calls made by defendants.  As  discussed above, it is undisputed that defendants called

18  plaintiff Irma Sanchez's workplace approximately 54 times and left messages for her approximately

19  25 times on the answering machine.  The messages were left on an answering machine and at times

20  were transcribed by her supervisor.  At other times, the supervisor allowed plaintiff Irma Sanchez to

21  listen to the messages herself in the office.  The messages consisted of a name, telephone number and

22  statement that the matter was "serious" or "urgent."  Defendants never spoke with plaintiff Irma

23  Sanchez at her workplace and she never returned any of their telephone calls.  The telephone calls

24  over the six-month period average approximately 2-3 calls per week and approximately four

25  telephone messages per month.

26        Both the state and federal fair debt collection practices acts incorporate statutory schemes that

27  set forth specific limits on damages.  *See, e.g.,* 15 U.S.C. §1692k(a)(2)(A)(FDCPA allows for

28  recovery of actual damages and additional damages as the court may allow up to $1000).  Because

**United States District Court**
For the Northern District of California

1   the complaint also includes state claims for intentional infliction of emotional distress, negligent

2   infliction of emotional distress, tort-in-se and invasion of privacy by intrusion upon seclusion,

3   plaintiffs may seek punitive damages on those claims.[5]  *See, e.g., Panahiasl v. Gurney,* 2007 WL

4   7388642 (N.D. Cal. 2007)(common law tort claims of invasion of privacy and tort-in-se recognized

5   in the FDCPA context in the Northern District of California).

6        The parties do not dispute that California Civil Code § 3294 is determinative in the instant

7   action.  It states in pertinent part as follows:

8        In an action for the breach of an obligation not arising from contract, where it is proven by
         clear and convincing evidence that the defendant has been guilty of oppression, fraud, or
9        malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of
         example and by way of punishing the defendant.

10  The statute itself defines malice, oppression and fraud as follows:

11       (1)   "Malice" means conduct which is intended by the defendant to cause injury to the
12             plaintiff or despicable conduct which is carried on by the defendant with a willful and
               conscious disregard of the rights or safety of others.

13       (2)   "Oppression" means despicable conduct that subjects a person to cruel and unjust
14             hardship in conscious disregard of that person's rights.

15       (3)   "Fraud" means an intentional misrepresentation, deceit, or concealment of a material
16             fact known to the defendant with the intention on the part of the defendant of thereby
               depriving a person of property or legal rights or otherwise causing injury.

    Generally, summary judgment should be denied where credibility bears on an issue of

17  material fact.  *See, SEC v. Koracorp Indust.,* 575 F.2d 692, 699 (9th Cir. 1978)("The courts have long

18  recognized that summary judgment is singularly inappropriate where credibility is at issue.");

19  *Dominguez-Curry v. Nevada Trasp. Dept.,* 424 F.3d 1027, 1035 (9th Cir. 2005)(judge does not make

20  credibility determinations to resolve disputed material facts; "such determinations are within the

21  province of the factfinder at trial").  This presumption is not without limitation.  Where a declaration

22  is contradicted by other credible evidence, the court may reject the evidence if it is so "undermined as

23  to be incredible." *Johnson v. Washington Metropolitan Area Transit Authority,* 883 F.2d 125, 128

24

25  _____

26       [5]   The state claims are not preempted by the federal Fair Debt Practices Act.  "Under 15 U.S.C. §1692n, the
    FDCPA does not preempt state laws unless and only to the extent 'those laws are inconsistent with any provisions of this
27  subchapter.'  Importantly, a state law is not inconsistent with the FDCPA 'if the protection such law affords any consumer
    is greater than the protection provided by this subchapter.'  Accordingly, only state laws which make it impossible to comply
28  with both state and federal law, such as where state law requires conduct prohibited by federal law, are preempted." *Joseph
    v. J.J. Mac Intyre Companies, LLC.,* 238 F. Supp.2d 1158, 1169-1170 (N.D. Cal. 2002)(internal citations omitted).

United States District Court
For the Northern District of California

1  (D.C. Cir. 1989).

2      Only plaintiffs Irma and Jorge Sanchez allege that defendants made certain threats against

3  them.  Plaintiff Irma Sanchez admits that she never took any of the telephone calls from defendants or

4  ever spoke to them.  Therefore, any evidence from her would be considered hearsay, and is generally

5  inadmissible at trial.  Testimony from other family members who may have received messages for

6  plaintiff Irma Sanchez, including Maria Isles or Margarita Sanchez, was not proffered for purposes of

7  this motion.  Testimony from Sophia Sanchez is unclear as to whether any threats were ever made.

8  *See,* Sophia Sanchez Depo. Tr. 27: 24-25; 28:17-19; 29:12-13; 30:14-18).  Jorge Sanchez claims that

9  defendants' threats involved taking him to court.  *See,* Jorge Sanchez Depo. Tr. 32:11-18; 37:17-21).

10  His testimony does not substantiate that defendants made any threats of an investigation or sending

11  him or his wife to jail.

12      For purposes of considering defendants' motion for partial summary judgment, the issue is

13  whether the volume of telephone calls made and threats to take plaintiffs to court constitute clear and

14  convincing evidence that defendants engaged in malicious, oppressive or fraudulent conduct.

15  Defendants have argued that the volume of calls was attributable to plaintiff Irma Sanchez's failure to

16  take any of their telephone calls, or to return any of their messages.  Plaintiff Jorge Sanchez alleges

17  that he was threatened with being taken to court, and defendant Karla Davis denies that such threats

18  ever occurred.  Defendants' reasoning for the volume of telephone calls made, and the alleged threats

19  made to Jorge Sanchez turn on the credibility of defendants' witnesses and plaintiff Jorge Sanchez

20  himself.  Viewing the evidence presented in the light most favorable to the opposing party, the

21  credibility of the respective parties in the instant action creates a genuine issue of material fact as to

22  whether taken together, the volume of telephone calls and the alleged threats constitute clear and

23  convincing evidence of malicious, oppressive or fraudulent conduct.  Accordingly, defendants'

24  motion for partial summary judgment is denied.

25

26

27

28

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted in part and denied in part and defendants' motion for partial summary judgment is denied.

IT IS SO ORDERED.

Dated:      *October 29, 2007*

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28